UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| ANDREA LYNN BROWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS DAVIDSON, individually | ) | |
| and as a police officer for the City of | ) | |
| Lafayette, JOHN WELLS, individually | ) | |
| and as a police officer for the City of | ) | Cause No: 4:06-cv-0142 AS-PRC |
| Lafayette, JOE CONN, individually | ) | |
| and as a police officer for Tippecanoe | ) | |
| County, JASON HUBER, individually | ) | |
| And as a police officer for Tippecanoe | ) | |
| County, CITY OF LAFAYETTE, and | ) | |
| TIPPECANOE COUNTY SHERIFF'S | ) | |
| DEPARTMENT | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Come now the defendants Thomas Davidson, John Wells and the City of Lafayette, and for their memorandum of law in support of their motion for summary judgment, state as follows. Defendants are entitled to summary judgment on the section 1983 claims because their conduct did not violate the Fourth or the Fourteenth Amendment, as a matter of law. The Monell claim is also subject to summary judgment as the City of Lafayette did not adhere to an unconstitutional policy, nor was it indifferent to training needs. The state law claims are subject to statutory immunity and dismissal on other grounds, or alternatively should be remanded to state court.

## PLEADINGS AND PROCEDURAL HISTORY

The plaintiff originally filed her complaint in state court but it was removed to this court on December 6, 2006. Browell's complaint alleges federal claims under Counts I and II. The other claims are state law claims. Count I is a section 1983 claim alleging the officers violated Browell's Fourth and Fourteenth Amendment rights under the United States Constitution. Count II is a section 1983 claim alleging municipal liability.

Count III is a state law claim against the defendants alleging assault and battery. It also alleges the City of Lafayette failed to properly train, supervise, and control its officers.

Count IV is a state law claim alleging negligence against the defendants. It alleges excessive force against the officers and that the City of Lafayette failed to properly train, supervise, and control its officers.

Count V is a state law claim alleging intentional infliction of emotional distress and negligent infliction of emotional distress against the officers and alleges the City of Lafayette failed to properly train, supervise, and control its officers.

Count VI and VII claim damages against the defendants for violating the plaintiff's rights under the Indiana constitution.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The defendants' statement of material facts is being filed as an appendix to this brief pursuant to Local Rules 7.1 and 56.1. (See Appendix A).

## ARGUMENT

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure a speedy and inexpensive determination of every action.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  See also United Ass'n of Black Landscapers v. City of Milwaukee, 916 F.2d 1261, 1267-68 (7th Cir. 1990), cert. denied, 111 S.Ct. 1317 (1991).  Not all factual disputes warrant denial of summary judgment, only disputes as to facts material to the substantive claim require resolution by trial.  Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2001).  Summary judgment, utilizing the Celotex standard, must be granted if the plaintiff cannot establish an element essential to his claim.  Beauchamp v. City of Noblesville, 320 F.3d 733, 742 (7th Cir. 2003).

### A)      The Fourth Amendment Is Not Applicable To Browell's Claims Under Section 1983; There Was No Seizure of Browell By LPD Officers.

The plaintiff has no claim for violation of the Fourth Amendment because there was no seizure within the meaning of the Fourth Amendment and it therefore doesn't apply to Browell's claims.  There is no seizure within the meaning of the Fourth Amendment unless an officer uses direct physical force against the subject or the subject submits to the officer's assertion of authority.  California v. Hodari D., 499 U.S. 621, 626-27 (1991); Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989).  In Brower v. County of Inyo, the Supreme Court held that, in order for a Fourth Amendment seizure to occur, the detention or taking must be willful.  489 U.S. 593, 596 (1989).  The plaintiff must "actually yield to a show of authority from the police or be physically touched by the police."  Tom v. Voida, 963 F.2d 952, 957 (7th Cir.1992) (citing Califonia v. Hodari D., 499 U.S. at 626, 111 S.Ct. 1547).

Here, there was no seizure at all by Lafayette officers.  Their rounds did not strike Browell.  Carter v. Buscher, 973 F.2d 1328, 1332-33 (7th Cir. 1992) (affirming summary judgment and holding no seizure occurred until shot actually struck suspect).

Other courts which have addressed situations of claimed excessive force where shots were fired at vehicles by pursuing police and the shots neither hit the pursued nor caused the pursued to submit have found that no seizure took place.  Adams v. City of Auburn Hills, 336 F.3d 515, 1519 (6th Cir. 2003); Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994); Cole v. Bone, 993 F.2d 1328 (8th Cir. 1993); Paris v.  Town of Alexander City, 45 F.Supp.2d 1295, 1302 (N.D. Ala. 1999) (motorist fleeing police was not seized when police shot his tires and he continued to flee).  See also Latta v. Keryte, 118 F.3d 693, 700 (10th Cir. 1997); Marion v. City of Corydon, 2008 WL 763211 at *6 (S.D. Ind. 3/20/08) (firing of rifle shots into vehicle with no effect in stopping vehicle does not constitute seizure); Shaw v. Goodrich, 2005 WL 2348473 at *2 (S.D. Ind., 9/26/05) (suspect not seized by firing of shots at vehicle where suspect continues to flee).

In Adams v. City of Auburn Hills, supra, the plaintiff claimed the police had used excessive force when they fired shots into the driver door of his vehicle and shot one of his tires.  The shooting, however, did not convince the plaintiff to stop and he continued to flee.  The court, citing abundant authority, found that the shooting did not result in plaintiff yielding to police authority, and, therefore, no seizure had occurred.  Id.  336 F.3d at 519.

In Cole v. Bone, supra, the suspect drove an 18-wheel tractor-trailer truck through a toll booth without paying the toll.  Police from Kansas and Missouri attempted to stop the truck in a variety of ways including rolling roadblocks and firing shots which struck the truck's tires, radiator and windows.  Cole, 993 F.2d at 1330-31.  These efforts were unsuccessful.  Finally a police officer, attempting to disable the truck's engine, fired a shot that hit the driver in the head.  This brought the

truck to a stop.  The Eighth Circuit found that the driver was not seized until the shot struck him.  Those shots which struck the truck during the course of pursuit did not constitute a "seizure" under the Fourth Amendment because those assertions of authority by the police failed to produce a stop.  Id. at 1332-33.

Bella v. Chamberlain, supra, involved a more exotic chase, but the same principle was held to be applicable.  Bella was a helicopter pilot who was forced at gunpoint to assist a prison escape.  During the course of the pursuit, a customs agent in the pursuing helicopter fired three shots at Bella's helicopter, one of which struck the helicopter.  The shot did not hit any person nor did Bella's helicopter stop.  The pursuit ended approximately an hour later when pursuing helicopters forced Bella to land.  Bella, 24 F.3d at 1253.  Bella subsequently sued the customs agent who had shot his helicopter, alleging that the agent had used excessive force in violation of the Fourth Amendment.  Following Cole, the Tenth Circuit found that since the shot neither hit Bella nor caused him to submit to a show of authority, no seizure had taken place.  Id. 24 F.3d 1256.  The shots fired by the police did not hit the hostage so there was no seizure. Id.

In this case, the evidence is clear that the shots fired by Davidson and Wells neither hit the plaintiff nor did they cause Lile to cease fleeing and yield to the authority of the police.  Rather, after the shots were fired by the Lafayette officers, he continued to flee.  Accordingly, there was no "seizure" for purposes of the Fourth Amendment.  Adams, supra; Cole, supra; Bella, supra.

Even if there was evidence that a shot fired by the Lafayette officers had struck plaintiff (which there is not), there still would not be a Fourth Amendment claim.  Brower holds that "[v]iolation of the Fourth Amendment requires the intentional acquisition of physical control.  A seizure occurs when an untended person or thing is the object of the detention or taking, but the detention or taking itself must be willful."  Brower, 489 U.S. at 596.  For example, in Landol-Rivera

v. Cosme, 906 F.2d 791 (1st Cir. 1990), the court applied the requirements of Brower to a hostage situation. In that case, a night manager of a restaurant was taken hostage by a robber. As the robber fled in a commandeered vehicle, the police fired at the vehicle, hitting the hostage. The hostage subsequently brought suit, alleging that he had been unreasonably seized under the Fourth Amendment. The First Circuit held that the intent language of Brower was not satisfied merely by the deliberateness with which an action is taken. A police officer's deliberate decision to shoot a car containing a robber and a hostage *for the purpose of stopping the robber's flight* does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern. Id. 906 F.2d at 795 (emphasis in original). Finding that the hostage was not the intended object of the deliberate police action, the court held that there was no "seizure" under the fourth Amendment.

The rationale of Landol-Rivera has been followed by other circuits in cases involving the accidental shooting of hostages. In Childress v. City of Arapaho, 210 F.3d 1154 (10th Cir. 2000), the plaintiffs were taken hostage by two escaped prison inmates. During the lengthy pursuit, police officers fired several shots at the vehicle in which the escaped convicts and hostages were fleeing. Unfortunately, the hostages were struck several times during the exchange of gunfire. The Tenth Circuit followed Landol-Rivera, finding that the officers did not "seize" the plaintiffs, but made every effort to deliver them from an unlawful abduction. Childress, 210 F.3d at 1157. Rather, the injuries to the plaintiffs were the "unfortunate but not unconstitutional 'accidental effects of otherwise lawful conduct.'" Id. Quoting Brower, 489 U.S. at 596. See also, Mederios v. O'Connell, 150 F.3d 164, 169 (2nd Cir. 1998) (no seizure occurred when police officers wounded a hostage during pursuit of fugitives); Rucker v. Hartford County, 946 F.2d 278, 279 (4th Cir. 1991) (no seizure occurred when officers wounded a bystander in an attempt to shoot tires of fleeing suspect's car).

Finally, the Seventh Circuit held in <u>Schaefer v. Goch</u> that there was no seizure and the Fourth Amendment was not applicable where the police accidentally shot and killed a hostage. 153 F.3d 793 (7th Cir. 1998). In <u>Schaefer</u>, the police were called to a residence where criminal suspect John Nieslowski was armed and acting erratic. He had previously threatened patrons at a nearby bar with a gun, was dressed up in military fatigues, and threatened to shoot police. A Special Response Team entered the house but retreated after Nieslowski fired at them with a shotgun. After the police were outside again Nieslowski's wife Kathy came out of the house. The police yelled at her to get down on the ground. She got down on her hands and knees at the top of the porch steps. John Nieslowski grabbed her and pulled her toward the door. The police fatally shot John Nieslowski but also accidentally shot Kathy Nieslowski.

The plaintiffs argued Kathy Nieslowski was "seized" because she yielded to the officer's show of authority when she complied with commands from SRT officers to get down on the ground. The Court disagreed. "The fact that Kathy was temporarily immobile does not necessarily mean that her freedom of movement was terminated . . . and the officers were not in a position to stop Kathy's husband from taking physical control of her himself." <u>Id</u>. at 796. The Court said "it is difficult to see how, even assuming that a seizure took place when Kathy complied with the officers' commands, that seizure could be seen as continuing once John began to pull Kathy back inside." The <u>Schaefer</u> court therefore held that the Fourth Amendment was not applicable to the Schaefers' claims.

Here, the police did not command Browell to do anything. She wouldn't have heard them anyway because she was unconscious. She did not yield to their show of authority. The police yelled at Lile to stop and pointed their firearms at Lile who made eye contact with deputy Dilling. Dilling was within about a foot of Lile and was pointing his weapon directly at Lile. But Lile

disregarded their commands and drove away, holding Browell as a hostage. Similar to the court's observation in Schaefer, it is difficult to see how any seizure by the police could have taken place after Lile hit Browell in the head knocking her unconscious and belted her into the Monte Carlo to take her as a hostage.

Even if Browell was aware of what was going on she could not have reasonably believed the police, instead of Lile, had terminated her freedom. She wasn't free to leave because Lile took her hostage. The police did not terminate her freedom of movement by their show of authority. Where police seek to stop someone, but the subject is "in fact stopped ... by a different means," no seizure occurs. Brower, 489 U.S. at 597, 109 S.Ct. 1378. The police sought to stop Lile, not terminate Browell's freedom of movement. The police were trying to free Browell from the clutches of her hostage taker who had just killed her son and likely was on his way to kill Browell.

The officers did not physically touch Browell either. It is uncontroverted that Davidson and Officer Wells shot at the Monte Carlo's tires and that none of their rounds entered the driver or passenger compartment of the car. In addition to Davidson and Wells' testimony, Detective Kohne of the Tippecanoe County Sheriff concluded the shots fired by Davidson and Wells did not enter the driver or passenger compartment of the car. Browell agrees there is no evidence that Lafayette officers fired shots which struck her.

Browell cannot proceed against the defendants on a Fourth Amendment theory under count I. The court should enter summary judgment in favor of both Davidson and Wells concerning plaintiff's purported Fourth Amendment claim.

**B)** **Davidson and Wells Did Not Violate Browell's Fourteenth Amendment Rights As Their Conduct Does Not "Shock the Conscience."**

Sgt. Davidson and Officer Wells, as well as the sheriff's deputies, did not violate Browell's Fourteenth Amendment rights because their conduct does not meet the "shocks the conscience" standard. As discussed above, the Fourth Amendment does not provide the applicable standard in this case to measure whether the defendants' conduct was constitutional. Browell therefore must resort to pursuing a Fourteenth Amendment substantive due process claim. See Schaefer v. Goch, supra, 153 F.3d 793 (7th Cir. 1998).

In this case, the applicable standard for a substantive due process claim is whether the officers' conduct shocked the conscience. The Supreme Court's decision in County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) "clarifies that not all substantive due process claims are to be assessed through the lens of deliberate indifference. Deliberate indifference, in fact, is merely the manifestation in certain situations of a more general inquiry, which is whether the government conduct at issue shocks the conscience." Schaefer v. Goch, supra, 153 F.3d at 797. The deliberate indifference standard is used when actual deliberation is practical, for example, where a prison official failed to make epilepsy medication available to an inmate while knowing he needed it. Id., citing Hudson v. McHugh, 148 F.3d 859 (7th Cir. 1998). In other words, there must be time and opportunity to deliberate. However, when the police face "unforeseen and rapidly changing circumstances that demand unreflective decisions with potentially grave consequences on every side, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the concerns of substantive due process." Schaefer at 798.

Like the Schaefer case, Browell's case is controlled by the Supreme Court's holding in County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The

officer's conduct in <u>Lewis</u> did not meet the "shock the conscience" standard, nor is the conduct here sufficient to meet that standard.  Summary judgment on Browell's section 1983 claim is therefore appropriate.

In <u>County of Sacramento v. Lewis</u>, an officer saw a motorcycle being operated at a high rate of speed.  It was being operated by an 18 year old who carried a 16-year-old boy as his passenger. A high speed chase ensued after the motorcyclist ignored the officer's orders to pull over.  The pursuit took place in a residential neighborhood.  The motorcycle and police vehicle wove in and out of oncoming traffic, attaining speeds up to 100 miles per hour, with the officer following at a distance as little as 100 feet.  The pursuit ended when the motorcycle tipped over as the operator tried to make a sharp left turn.  The patrol car then skidded into the plaintiff-passenger at a speed of 40 miles per hour.  The plaintiff died at the scene.  <u>Lewis</u>, 118 S.Ct. at 1712.

The Court in <u>Lewis</u> held that the plaintiff's Fourteenth Amendment claim was to be measured according to the "shocks the conscience" standard, and that "in a high speed automobile chase aimed at apprehending a suspected offender . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct, shocking to the conscience." <u>Lewis</u>, 118 S.Ct. at 1711-12.

The Court restated its categorical rule toward the end of its opinion:  "We hold that high speed chases with no intent to harm suspects physically or worsen their legal plight do not give rise to liability under the Fourteenth Amendment redressible by an action under section 1983."  <u>Lewis</u>, 118 S.Ct. at 1720.  A unanimous court held that the pursuing officer's conduct did not meet the shocks the conscience standard and directed entry of summary judgment.

In <u>Schaefer v. Goch</u>, <u>supra,</u> the court affirmed summary judgment finding the officers' conduct did not shock the conscience, explaining:

> On the other hand, firing a gun when an innocent party who has just attempted to surrender is standing, by most accounts, only inches from the intended target seems even more dangerous a course than pursuing a suspect at high speeds through city or suburban streets.  Under the analysis employed in <u>Lewis</u>, however, the officers' decision to fire does not "inch close enough to harmful purpose" to shock the conscience, even assuming that John never swung his weapon in the direction of the officers.  Given the high-pressure, life-and-death nature of the standoff the officers were not required to wait until John actually pointed his shotgun at them.  The man they saw before them had already fired upon officers once, he was known to be a "fighter", and he had threatened a number of other persons with the same type of weapon he carried with him onto the porch.  The situation was fluid, uncertain, and above all dangerous, and the officers' decision to shoot, regrettable though its results turned out to be, does not shock the conscience."

153 F.3d at 798.

<u>Landol-Rivera v. Cosme</u>, <u>supra,</u> 906 F.2d 791 (1st Cir. 1990), a pre-<u>Lewis</u> decision, held the plaintiff's substantive due process claim failed as a matter of law even under a deliberate indifference standard, explaining:

> We have held that government officials may be held liable for a substantive due process violation only if their conduct "reflect[ed] a reckless or callous indifference to an individual's rights." <u>*Gutierrez-Rodriguez v. Cartagena,*</u> 882 F.2d 553, 559 (1st Cir.1989) (quoting <u>*Germany v. Vance,*</u> 868 F.2d 9, 18 (1st Cir.1989)).  Plaintiff has provided no evidence from which a jury could infer such a state of mind on the part **\*797** of either Cruz or Cintron.  In this tense, rapidly developing situation, where the fleeing suspect was armed, had threatened to kill his hostage, and had commandeered a car and abducted its driver, the decision to shoot toward the hijacked vehicle, by itself, falls far short of demonstrating reckless or callous indifference toward the hostage's rights.
>
> To hold that shooting in such circumstances violates the constitutional rights of a hostage whom the officers are trying to free would be to hamstring seriously law enforcement officers in their efforts to resolve explosive situations.  It is inevitable that the police response to violent crime will at times create some risk of injury to others, including innocent bystanders.  We decline to hold that the mere presence of risk reflects a callous indifference to the constitutional rights of those individuals potentially harmed.  Any other conclusion would both chill law enforcement officers in the performance of their duties and encourage hostage-taking and criminal activity in public settings so as to minimize police intervention.

Id. at pp. 797-98.

In <u>Childress v. City of Arapaho</u>, <u>supra,</u> 210 F.3d 1154 (10th Cir. 2000), the plaintiffs were taken as hostages in a mini-van by prison escapees and shot by police.  Holding the defendants did not violate the plaintiffs' due process rights, the <u>Childress</u> court applied the "shocks the conscience" test to the plaintiffs' Fourteenth Amendment claim, stating:

> In <u>*County of Sacramento v. Lewis,*</u> 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court clarified the substantive due process standard of culpability for an officer involved in a police pursuit. The Court held that "in a high-speed automobile chase aimed at apprehending a suspected offender ... only a purpose to cause harm unrelated to the legitimate object of arrest" is sufficiently "shocking to the conscience" to establish a due process violation. <u>*Id.*</u> <u>at 836, 118 S.Ct. 1708</u>. In rejecting a "deliberate indifference" standard of fault, the Court stressed that such a standard is workable "only when actual deliberation is practical." <u>*Id.*</u> <u>at 851, 118 S.Ct. 1708</u>. Police officers giving chase make decisions "in haste, under pressure, and frequently without the luxury of a second chance." <u>*Id.*</u> <u>at 853, 118 S.Ct. 1708, 1720</u> (internal quotation marks and citation omitted). Given these pressures, the Court concluded that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." <u>*Id.*</u> <u>at 854, 118 S.Ct. 1708</u>.
>
> Applying *Lewis,* we have previously directed dismissal of claims brought on behalf of an innocent bystander killed during a police struggle with a suspect. <u>*Radecki v. Barela,*</u> <u>146 F.3d 1227, 1232 (10th Cir.1998)</u>. The *Lewis* principles therefore apply whether the claimant is a police suspect**1158** or an innocent victim. The touchstone is whether the officers "acted with an intent to harm the participants or to worsen their legal plight." *Id.*

Here, there was no intent to harm Browell; there was instead intent to stop Bill Lile, a violent and dangerous fleeing murderer who had just committed one murder and offered good reasons to believe he was going to seriously injure or kill Andrea Browell.  It was certainly possible he would have taken other persons hostage as well or put other motorists in grave peril.  As soon as the police arrived on the premises Lile was putting Browell in the car.  The garage door opened and Lile stopped just long enough to see an officer aiming a gun at him and yelling at him to stop.  He sped backwards out of the driveway and took off down the street.  He had just killed Browell's son and still had the gun in his car.  Browell was unconscious and defenseless.  Since Lile had already

shot and killed one person, he was motivated to make desperate attempts to escape.  Interstate 65 was a short distance away.  The situation was high-pressure, fluid, uncertain, and dangerous.  Davidson's and John Wells' decision to shoot at the car tires to stop Lile does not meet the standard of "shocks the conscience."

Moreover, had they attempted to shoot directly at Lile it would not have shocked the conscience either.  Even assuming the sheriff's deputies knew Browell was in the car, deputy Huber and deputy Conn's decisions to shoot at Lile does not meet the standard of "shocks the conscience" either.  No one but Lile demonstrated an intent to injure Browell.  "The *sine qua non* of liability in cases analogous to high-speed chases, therefore, is a 'purpose to cause harm."  Schaefer v. Goch, supra, 153 F.3d at 798, quoting, County of Sacramento v. Lewis, 523 U.S. 833.

The officers on the scene demonstrated only attempts to stop Lile and return Browell to safety.  There is no evidence supporting any claim that Davidson and Wells acted with no legitimate law enforcement purpose with intent to harm Browell.  The Fourteenth Amendment claim therefore fails and should be dismissed.

**C)**      **Davidson and Wells are Entitled to Qualified Immunity.**

Qualified immunity shields officers from civil liability as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated.  Leaf v. Shelnutt, 400 F.3d 1070, 1080 (7th Cir. 2005), citing Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  When qualified immunity applies a defendant is not merely entitled to a defense from liability; he is entitled to not stand trial.  Leaf, id.

In determining whether qualified immunity will apply to shield a defendant from suit, the court undertakes a two part inquiry, Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), to assess "the objective reasonableness of an official's conduct, as measured by

13

reference to clearly established law," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). First, the court must ask the threshold question whether, taken in the light most favorable to the plaintiff, do the facts show the defendant's conduct violated a constitutional right? Leaf, 400 F.3d at 1080. If no constitutional right has been violated there is no need for further inquiry.

If the facts make out a constitutional violation then the court must determine "whether the right was clearly established." Saucier, 533 U.S. at 201, 121 S.Ct. 2151. This inquiry is a specific one which asks whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Leaf, 400 F.3d at 1080. The right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates the right. Id. The action's unlawfulness must be "apparent" from pre-existing law. Id.

The plaintiff bears the burden of overcoming of a defendant's assertion of qualified immunity and the plaintiff is required to show that the right in question was clearly established at the time the alleged violation occurred. Kiddy-Brown v. Blagogevich, 408 F.3d 346, 359 (7th Cir. 2005). To show this the plaintiff may point to closely analogous cases which establish that the conduct was unlawful, or demonstrate that the violation was so obvious that a reasonable state actor would know that what he is doing violates the Constitution. Morrell v. Mock, 270 F.3d 1090, 1100 (7th Cir. 2001).

Here, Davidson and Wells did not violate the plaintiff's constitutional rights at all. Even if there were an arguable violation there is no closely analogous case or existing law which shows that Davidson's and Wells' conduct violated the plaintiff's constitutional rights. Lile was a violent fleeing criminal suspect who Davidson knew to be a convicted child molester. Dispatch told

Davidson and Wells that a man had shot the caller's son and was asking for the keys.  At the scene Lile disregarded commands from police who were aiming their firearms at Lile at close range.  Lile accelerated fast to get out of the driveway and into the street.  Davidson and Wells saw Browell in the car but she was slumped over and not moving.  The officers were entitled to use deadly force to stop Lile.  There are no reported decisions which would have told Davidson and Wells that to shoot at the car or at Lile would violate Browell's constitutional rights. The most closely analogous case from the Seventh Circuit is Schaefer v. Goch, supra, 153 F.3d 793 (7th Cir. 1998) which held that the officers did not violate the plaintiff's constitutional rights.  A reasonable law enforcement official could and would conclude the officers' actions did not violate the Constitution.  Sgt. Davidson and Officer Wells are therefore entitled to qualified immunity on the section 1983 claims directed against them individually.

**D)    The City of Lafayette, and Davidson and Wells in their Official Capacities as Police Officers, Are Entitled to Summary Judgment on the Section 1983 Claim.**

Municipalities cannot be held liable under section 1983 on a *respondeat superior* theory. Monell v. Dept. of Social Svcs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Monell instructs that municipalities can be liable under section 1983 only where it is established that the municipality, in executing official policy or practice, caused the constitutional deprivation.  A municipal policy or practice must be the "direct cause" or "moving force" behind the constitutional violation. City of Oklahoma City v. Tuttle, 471 U.S. 808, 820, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  Nor can there be municipal liability if there is no individual liability against officers on the underlying substantive claim.  Windle v. City of Marion, 321 F.3d 658, 663 (7th Cir. 2003).

There can be no municipal liability under section 1983 where there is no constitutional deprivation.  As argued above, Browell's constitutional rights were not violated.  Accordingly,

Browell's civil rights claim against the City of Lafayette must fail as well. Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 596-597 (7th Cir. 1997).

There can be no liability against the City of Lafayette for any purported constitutional deprivation by Davidson and Wells. This is so because the City of Lafayette did not adhere to an unconstitutional policy, custom or practice, nor was the city deliberately indifferent to training needs.

Unconstitutional policies or customs can take three forms, 1) an express policy that, when enforced, causes a constitutional deprivation, or 2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law, or 3) where the constitutional injury was caused by a person with final policymaking authority. Garrison v. Burke, 165 F.3d 565, 571-72 (7th Cir. 1999); Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002). None of these bases apply here. Neither Davidson nor Officer Wells were vested with final policymaking authority for the City of Lafayette. The policymaker for the city, concerning law enforcement matters, is the chief of police or mayor. See, e.g., Eversole v. Steele, 59 F.3d 710, 716 (7th Cir. 1995). Further, the Lafayette Police Department's written policy and procedures concerning use of force and hostage situations are not express policies which, when enforced, cause constitutional deprivations. The use of force policy does not permit use of deadly force except under circumstances constitutionally permissible under Tennessee v. Garner, 471 U.S. 1 (1985); "when an officer believes that a suspect's actions place him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury the officer can reasonably exercise the use of deadly force." Muhammed v. City of Chicago, 316 F.3d 680, 683 (7th Cir. 2002). If a suspect threatens an officer or others, the risk of

serious harm is established for purposes of <u>Tennessee v. Garner</u>. <u>Bell v. Irwin</u>, 321 F.3d 637, 639 (7th Cir. 2003).

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not unconstitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

<u>Tennessee v. Garner, supra</u>, 471 U.S. 1, 11-12 (1985).

Browell must show that the policy itself is unconstitutional, <u>Estate of Novack v. County of Wood</u>, 226 F.3d 525, 531 (7th Cir. 2000), and that a constitutional injury was caused by the express unconstitutional policy. <u>Id.</u>; <u>Monell</u>, 436 U.S. at 694-95 (holding that municipality may be liable under section 1983 for a policy which requires pregnant women to take unpaid leave before leave was required for medical reasons because the policy itself was unconstitutional). The policies of the City of Lafayette did not encourage the use of deadly force by officers except under constitutionally permissible circumstances, which circumstances existed at the time of the shooting.

Nor can plaintiff proceed under the option of a custom or widespread practice. Under that option, proof of isolated acts of misconduct will not suffice; instead, the plaintiff must present a series of constitutional violations which prove that the city abided by unofficial policy or custom of tolerating violations of constitutional rights by means of the unlawful use of deadly force. The plaintiff bears the burden on summary judgment of coming forth with evidence of a custom, per <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response to interrogatories requesting all facts and the identity of witnesses which support plaintiff's claim that the City of Lafayette was on notice of a pattern of ongoing constitutional violations and practices against citizens by its officers, and state the incidents or series of incidents which provide the basis

for this allegation, plaintiff just states "Davidson and Wells violated commonly known police practices and procedures in firing into the vehicle containing the plaintiff" (Pltff.s answ to interrog. nos. 16, 17, and 18). When asked to supply by request for production all documents, writings and things supporting plaintiff's claim that the city adhered to an unconstitutional custom, policy or practice, plaintiff responded by stating "plaintiff relies on all documents produced by the defendants and all material and documents included in the criminal investigation of State v. Lile, which documents are accessible to the defendants through the Tippecanoe County Prosecuting Attorney's Office." (Pltff's. answ to interrog. no 11, 12, and 8).  Browell can point to no evidence which supports a custom or widespread practice of constitutional abuse.

As to any claim of inadequate training, the Supreme Court in Canton held that claims of municipal liability under section 1983 based on inadequate training can yield liability against a municipality only where the city's failure to train reflected deliberate indifference to the constitutional rights of its citizens. Canton, 489 U.S. at 392, 109 S.Ct. at 1206.  What this means is that the city's policymakers have to be deliberately indifferent to a pattern of constitutional violations which resulted from inadequate training of the police.  Hirsch v. Burke, 40 F.3d 900, 904 (7th Cir. 1994).  This notice of prior violations could serve to prove that the failure to provide further training was tantamount to a deliberate or conscious decision on the part of the city's policymakers to allow the violations to continue.  Hirsch, id.; Canton, 489 U.S. 385, 109 S.Ct. at 1208 (O'Connor, J., concurring).

The record shows the city provided ample training to its officers.  Davidson and Wells were both experienced officers.  Davidson has been employed by the City of Lafayette Police Department since 1995 and before that served in the Air Force for 11 years in which he was assigned to security police and received SWAT team training when he was in the Air Force.  Both he and Wells were

well-trained in using firearms, use of deadly force, and shoot/don't shoot principles. Wells graduated from the law enforcement academy in 1986 and has been employed since 1986 by LPD.

This proof defeats any inference of deliberate indifference to training needs.[1]

Finally, there can be no municipal liability without an underlying constitutional violation by Davidson or Wells. Jenkins v. Bartlett, 487 F.3d 482, 492 (7th Cir. 2007); Windle v. City of Marion, 321 F.3d 658, 663 (7th Cir. 2003). Since neither Davidson nor Wells violated Browell's constitutional rights, the city cannot be liable either.

### E)   Davidson and Wells are Entitled to Dismissal with Respect to the State Law Claims Against Them Individually.

The Indiana Tort Claims Act, Ind. Code § 34-13-3-5(b) explicitly provides that a claim against a governmental employee is barred if that employee was acting within the scope of his employment. "In general, a plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his employment." Miner v. Southwest School Corp., 755 N.E.2d 1110, 1114-15 (Ind. App. 2001). The Indiana Supreme Court interpreted scope of employment under Ind. Code § 34-13-3-5 in Bushong v. Williamson, 790 N.E.2d 467, 472 (Ind. 2003), concluding that suit against a governmental employee is barred if the plaintiff alleges the employee acted within the scope of employment. To bring a claim against the officers individually the complaint must allege the officers were acting outside the scope of their employment and would have to plead operative facts establishing they were acting outside the scope

---

[1]Deliberate indifference in this context means proof of a pattern or series of incidents of unconstitutional conduct coupled with the municipality's inaction and response so that it is fair to infer that the inaction itself is the city's "policy." Harris v. City of Marion, 79 F.3d 56, 59 (7th Cir. 1996); Palmer v. Marion County, 327 F.3d 588, 596 (7th Cir. 2003). The plaintiff would have to offer proof of a series of constitutional violations coupled with inadequate training on the part of the city in order to withstand summary judgment on a training claim.

of their employment.   Indiana Code 34-13-3-5(c) states:   "A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:  (1) criminal;  (2) clearly outside the scope of the employee's employment;  (3) malicious;  (4) willful and wanton; or (5) calculated to benefit the employee personally.   The complaint must contain a reasonable factual basis supporting the allegations."   Here, the plaintiff's complaint alleges Davidson and Wells were "at all times relevant to the incidents which are the subject of this lawsuit, an officer of the Lafayette Police Department." (Complaint, paras. 3 and 4).  Davidson and Wells admitted they were acting within the scope of their employment with the City of Lafayette at the time of the subject incident (Answer paras. 3 and 4).

The complaint alleges Davidson and Wells were at all relevant time officers.   The defendants admitted scope of employment in their answer.  The complaint provides no factual basis to conclude the officers were acting outside the scope of their employment.  The undisputed facts supported by the designations of evidence before the Court establish the officers were acting in the scope of their employment.   Thus, the state law claims against Wells and Davidson must be dismissed.

**F)**   **The State Law Claims Against the City are Barred by Statutory Immunity Pursuant to Indiana Code § 34-13-3-3(8).**

The Indiana Tort Claims Act provides that a governmental entity is not liable for a loss resulting from the enforcement of law.   Ind. Code § 34-13-3-3(8).   Browell alleges assault and battery under Count III, excessive force under Count IV, intentional infliction of emotional distress and negligent infliction of emotional distress under Count V.  The plaintiff also alleges under these counts the City of Lafayette failed to properly train, supervise, and control its officers.  All of these state law tort claims are barred by law enforcement immunity under the Indiana Tort Claims Act.

The Indiana Court of Appeals has applied law enforcement immunity under section 3(8) to a variety of circumstances, including claims in battery.  City of Anderson v. Davis, supra, 743 N.E.2d 359 (Ind. App. 2001) (city immune from liability for negligence in controlling police dog); O'Bannon v. City of Anderson, 733 N.E.2d 1 (Ind. App. 2000) (city immune from liability for actions of officers in effecting arrests of armed felon); City of Anderson v. Weatherford, 714 N.E.2d 181 (Ind. App. 1999) (city immune from liability for intentional infliction of emotional distress by police officers).

Some federal district courts have also applied the immunity to claims of excessive force by police officers.  Sellers v. Marion County Sheriff's Dept., 2002 WL 1630008 *6 (S.D. Ind. 2002) (summary judgment to police officers on state law tort claim based upon alleged use of excessive force); Jordan v. City of Indianapolis, 2002 WL 32067277 at *11 (S.D. Ind. 12/19/02) (law enforcement immunity precludes claims in battery); Alexander v. Doe, 2003 WL 22244782 at *10 (S.D. Ind. 8/20/03) (law enforcement immunity precludes claim of intentional infliction of emotional distress); Fox v. Pittinger, 2005 WL 1712216 *8 (N.D. Ind. 7/21/05) (city entitled to statutory immunity on claim of excessive force against police officer).  Other judges in the Southern District have declined to apply the immunity to police excessive force claims.  Phelps v. Hamer, 2004 WL 1146489 (S.D. Ind. 5/10/04); Rising-Moore v. Wilson, 2005 WL 1607187 (S.D. Ind. 7/7/05); Johnson v. City of Indianapolis, 2005 WL 2348475 (S.D. Ind. 9/22/05).

There is ample support for applying the immunity to Browell's claims of assault and battery, excessive force, intentional and negligent infliction of emotional distress, and negligence, per cases from the Court of Appeals cited above.  See, e.g., City of Anderson v. Weatherford, supra, applying immunity to claims of intentional and negligent infliction of emotional distress.    The immunity should apply as well to Browell's claim that the Lafayette Police Department failed to train,

supervise and control its police officers, which is simply another aspect of the plaintiff's negligence claim against the City of Lafayette.  Moreover, the plaintiff cannot meet her burden of showing Browell was injured because of negligent training.

**G)     The Facts Fail to Establish Lafayette Officers Committed the Torts of Assault, Battery, or Infliction of Emotional Distress**

Assuming for the sake of argument statutory law enforcement immunity doesn't apply, the facts fail to establish Davidson or Wells committed assault or battery against Browell.  The facts also fail to establish the elements necessary to show negligent infliction of emotional distress, and the plaintiff's claim of intentional infliction of emotional distress fails as well.

1)     Assault and Battery

Davidson and Wells were entitled to use deadly force to stop Lile pursuant to Ind. Code 35-41-3-3, which tracks Tennessee v. Garner, 471 U.S. 1 (1985).  Thus, their conduct cannot be considered an assault or battery against Browell, who was unconscious due to the fact Lile had knocked her out inside the house, and therefore could not have been in "apprehension" of any purported assault.  Davidson and Wells shot at the car tires and didn't shoot Browell.  The tort of battery is the knowing or intentional touching of one person by another in a rude, insolent or angry manner.  Wallace v. Rosen, 765 N.E.2d 192 (Ind. App. 2002).  Browell's battery claim must be dismissed because the police were entitled to use deadly force against Lile to stop him and they didn't shoot Browell.

2)     Negligent and/or Intentional Infliction of Emotional Distress

Until 1991, a plaintiff could not recover damages for mental anguish unless the plaintiff had suffered a physical impact which had caused the emotional distress, or unless there was a showing of fraud, malice or other like intentional conduct.  The impact requirement was modified in 1991 to allow recovery where the plaintiff sustains a direct impact by the negligence of another and by

virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person.  Shuamber v. Henderson, 579 N.E.2d 452, 456 (Ind. 1991).

In 2006, the Indiana Supreme Court in Atlantic Coast Airline v. Cook, 857 N.E.2d 989 (Ind. 2006) reaffirmed a claimant must demonstrate a direct physical impact in order to pursue a claim for negligent infliction of emotional distress.  Cook, 857 N.E.2d at 1000.  Here, there was no impact caused by Davidson or Wells.  Their shots did not strike Browell.  Her claim is barred.

Browell's claim of intentional infliction of emotional distress must also fail.  To establish a claim for intentional infliction of emotional distress, affirmative conduct is required, of an outrageous and extreme nature, beyond that which is merely unreasonable.  Inlow v. Wilkerson, 774 N.E.2d 51, 57 (Ind. App. 2002), *transfer denied*, 783 N.E.2d 705.  Conduct is "extreme and outrageous" only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Powdertech, Inc. v. Joganic, 776 N.E.2d 1251, 1263 (Ind. App. 2002). The requirements to prove the tort of intentional infliction of emotional distress are rigorous.  Creel v. I.C.E. & Assoc., 771 N.E.2d 1276, 1282 (Ind.App. 2002).   The intent to harm emotionally constitutes the basis of the tort of intentional infliction of emotional distress.  Creel, 771 N.E.2d at 1282.   After all, outrage is an intentional tort, predicated upon intentional outrageous conduct directed toward the plaintiff, with intent to cause plaintiff severe emotional distress.

The plaintiff cannot establish evidence of intentional outrageous conduct directed toward her.  The police were trying to stop Lile.  There are no facts which support a claim of intentional infliction of emotional distress.

The plaintiff's state law claims are subject to immunity but even without immunity Lafayette and its officers are entitled to summary judgment on Browell's state law claims.

**H)** **The Plaintiff's State Law Claims for Negligent Training, Supervision and Control Must Be Dismissed.**

As argued above Browell's state law negligence claims are barred by law enforcement immunity under the Tort Claims Act. Browell's claim of negligence against the City alleging it was negligent in training, supervising and controlling its officers is duplicative of its claims against Davidson and Wells. Claims of negligent hiring and retention are duplicative and superfluous in light of the doctrine of respondeat superior, which provides the means for recovering damages caused by an employee's negligence. Levinson v. Citizens Nat'l Bank of Evansville, 644 N.E.2d 1264 (Ind. App. 1994). The same reasoning applies to a negligent supervision claim. Board of School Commissioners v. Pettigrew, 851 N.E.2d 326, 332 (Ind. App. 2006).

In Pettigrew, the plaintiff claimed defamation against the Indianapolis Public School Corporation and two of its employees, Grubb and Torzewski. Pettigrew claimed the school superintendent negligently supervised Grubb by failing to provide instruction to Grubb. Grubb and Torzewski were acting in the scope of their employment so there was no separate cause of action of for negligent supervision. "Pettigrew's claim for negligent supervision is duplicative as respondeat superior already provides a vehicle for recovering damages from an employer for negligence committed by an employee with in the scope of his employment." Id. p. 333. Here, the plaintiff's claim that the City failed to properly train, supervise and control its officers is duplicative of the underlying state law claims against Davidson and Wells alleging excessive force, assault and battery, negligence, and infliction of emotional distress. The City admitted in its answer and has always maintained that Davidson and Wells were acting in the scope of their employment, so

plaintiff's claim against the City of Lafayette that it failed to properly train, supervise and control its officers is duplicative and should be dismissed.

**I)**      **The Plaintiff Has No Claim Under The Indiana Constitution.**

Browell alleges under counts VI and VII that the defendants caused the plaintiff to be deprived of her Indiana constitutional rights, including but not limited to those under Article 1, Section 11 of the Indiana Constitution, by using a degree of force that was excessive and unreasonable under the circumstances, and in violation of Plaintiff's rights to be free of an unreasonable seizure.  Section 11 states:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The plaintiff has already brought claims of excessive force, battery, infliction of emotional distress as state law tort claims.  If state tort law is generally available, even if restricted by immunity and other provisions of the Indiana Tort Claims Act, it is unnecessary to find a state constitutional tort, and a state constitutional tort would still be subject to immunity under the Tort Claims Act.  See Cantrell v. Morris, 849 N.E.2d 488 (Ind. 2006).  Browell's complaint offers no compelling need to create a new cause of action where existing tort law already protects her rights guaranteed by the Indiana Constitution.  Id. at 498.  Accordingly, Counts VI and VII alleging violation of Browell's rights under the Indiana Constitution should be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants, Thomas Davidson, John Wells, and the City of Lafayette, respectfully request the court enter summary judgment in their favor and against the plaintiff.

Respectfully submitted,

STEPHENSON MOROW & SEMLER

 *s/ Mark A. Holloway*
Mark A. Holloway, Attorney No. 16750-49
Attorney for defendants, City of Lafayette,
Thomas Davidson and John Wells, individually
and as police officers of the City of Lafayette

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2008, a copy of this document was filed electronically.

Notice of this filing will be sent to the following persons by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

William E. Emerick
wee@stuartlaw.com
Barry L. Loftus
bll@stuartlaw.com
STUART & BRANIGIN
300 Main Street, Ste. 900
P. O. Box 1010
Lafayette, IN  47902-1010

Douglas J. Masson
djm@hlblaw.com
HOFFMAN LUHMAN & MASSON, PC
201 Main Street, Ste. 700
P. O. Box 99
Lafayette, IN  47902-0099

 *s/ Mark A. Holloway*
Mark A. Holloway

STEPHENSON MOROW & SEMLER
8710 N. Meridian Street, Suite 200
Indianapolis, Indiana 46260
Telephone:  (317) 844-3830
Fax: (317) 573-4194
Email:  mholloway@stephlaw.com

05-5247/tjr