UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| ANDREA LYNN BROWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS DAVIDSON, individually | ) | |
| and as a police officer for the City of | ) | |
| Lafayette, JOHN WELLS, individually | ) | |
| and as a police officer for the City of | ) | Cause No:  4:06-cv-0142 AS-PRC |
| Lafayette, JOE CONN, individually | ) | |
| and as a police officer for Tippecanoe | ) | |
| County, JASON HUBER, individually | ) | |
| and as a police officer for Tippecanoe | ) | |
| County, CITY OF LAFAYETTE, and | ) | |
| TIPPECANOE COUNTY SHERIFF'S | ) | |
| DEPARTMENT | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Come now the defendants Thomas Davidson, John Wells and the City of Lafayette, and for their reply memorandum in support of their motion for summary judgment state as follows:

## ARGUMENT

### A)    There Was No Seizure by the Lafayette Defendants

As noted in the opening brief of the Lafayette defendants, the Supreme Court has held that there is no seizure within the meaning of the Fourth Amendment unless an officer uses direct physical force against the subject or the subject submits to the officer's assertion of authority. California v. Hodari D., 499 U.S. 621, 626-27 (1991).  Plaintiff appears to wish to gloss over this

requirement, to group all defendant officers together, to assume that a seizure has occurred and to argue about whether it was intentional (response, pp. 5-9).

In order to achieve this result, Browell misstates the record, representing to the court, without citation to any evidence in the record, that fragments from the bullets fired by the Lafayette officers struck Lile, causing him to wreck the vehicle he was using to get away (response, p. 8). The Lafayette defendants have designated uncontroverted evidence that none of their bullets entered the driver or passenger compartment of the vehicle. Lt. Kohne of the Tippecanoe County Sheriff's Office concluded that the .40 caliber bullets did not enter the driver/passenger compartment of the vehicle driven by Lile as he attempted to flee police on November 25, 2004 (Kohne aff., p. 8). Both Sgt. Davidson and officer Wells testified in deposition and by affidavit that they did not fire shots into the driver/passenger compartment of the car. Plaintiff has not designated any evidence to the contrary and, consequently, has created no question of fact on this issue. Accordingly, it is undisputed that none of the shots fired by Davidson or Wells struck either Lile or Browell (no direct physical force against the subject). It is further undisputed that, after the Lafayette officers fired at the tires of the fleeing vehicle, the vehicle continued to flee (no submission to assertion of authority). Lile continued to flee in the vehicle until shots were fired by Tippecanoe officers and the Monte Carlo hit a police car, causing it to tip over.

The Lafayette defendants have cited ample authority for the proposition that shots fired into a vehicle which neither strike the subject or cause the vehicle to yield to the show of authority do not constitute a seizure under the Fourth Amendment, e.g., Adams v. City of Auburn Hills, 336 F.3d 515, 519 (6th Cir. 2003); Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994); Cole v. Bane, 993 F.2d 1328, 1332-33 (8th Cir. 1993); Marion v. City of Corydon, 2008 WL 763211 at *6 (S.D. Ind., 3/20/08); Shaw v. Goodrich, 2005 WL 2348473 at *2 (S.D. Ind., 9/26/05). See also Troupe v.

Sarasota County, Fla., 419 F.3d 1160, 1167 (11th Cir. 2005) (unsuccessful attempt to shoot tires not a seizure).

Plaintiff cites no authority to the contrary. Instead, she cites cases where either the vehicle yields to the assertion of police authority or a shot strikes the subject and a seizure occurs, e.g., Jamieson v. Shaw, 772 F.2d 1205 (5th Cir. 1985) (car stopped by roadblock – yielded to authority); Fisher v. City of Memphis, 234 F.3d 312 (6th Cir. 2001) (bullet struck passenger-direct physical contact); Flores v. City of Palacios, 381 F.3d 391 (5th Cir. 2004) (driver voluntarily stops car – yields to authority); Keller v. Frink, 745 F.Supp. 1428, 1432 (S.D. Ind. 1990) (shot strikes driver/plaintiff – direct physical contact). No case cited by the plaintiff involves the situation of the Lafayette police officers here, where the fired shots neither strike the plaintiff nor cause the vehicle to yield to the police authority. The law is clear that under those circumstances, no seizure under the Fourth Amendment occurs. Hodari D., supra.

Even if there was evidence that a shot fired by the Lafayette police officers struck the plaintiff (which, again, there is not), there would be no seizure as contemplated by the Fourth Amendment in that she would not have been the subject of direct physical force intentionally applied. Troupe , supra, 419 F.3d at 1166-67; Childress v. City of Arapaho, 210 F.3d 1154, 1157 (10th Cir. 2000); Mederios v. O'Connell, 150 F.3d 164, 169 (2d Cir. 1998); Landol-Rivera v. Cruz Cosme, 906 F.2d 791 (1st Cir. 1990).

There was no seizure under the Fourth Amendment in this case by the officers of the Lafayette Police Department and the Lafayette defendants are entitled to summary judgment on this claim.

**B)**    <u>**Defendants Had Probable Cause to Use Deadly Force to Stop Lile**</u>

Browell argues, via her expert William Gaut, that the police did not have probable cause to use deadly force.  She argues the police could only use deadly force if Lile posed an immediate threat of harm to the police or others. This argument is an incomplete statement of the holding in <u>Garner</u>, and Gaut's opinions are conclusions which describe incorrect statements of law, and  are the subject of the defendants' motion to strike.

If a suspect threatens an officer or others, the risk of serious harm is established for purposes of <u>Tennessee v. Garner</u>.  <u>Bell v. Irwin</u>, 321 F.3d 637, 639 (7th Cir. 2003).

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not unconstitutionally unreasonable to prevent escape by using deadly force.  Thus, if the suspect threatens the officer with a weapon or <u>there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.</u>

<u>Tennessee v. Garner</u>, 471 U.S. 1, 11-12 (1985) (emphasis added).

It is undisputed that Sgt. Davidson knew before he arrived on the scene that Browell reported someone had a gun and had shot her son.  She identified Bill Lile as the person who shot her son.  Davidson knew who Lile was because Lile was a convicted child molester.  Wells also knew Browell's son had been shot by a male suspect. They knew that the caller was whispering on the phone, Lile was yelling for keys, and grabbed Browell just before the phone was disconnected. When police have information from a single witness or putative victim whom they have no reason to disbelieve, they possess probable cause.  <u>Jenkins v. Keating</u>, 147 F.3d 577, 585 (7th Cir. 1998). Consequently, there was probable cause to believe that Lile had committed a crime involving infliction of serious harm; and the  plaintiff herself was the source of the probable cause.  Contrary to plaintiff's assertion, police only need probable cause to believe that the suspect has committed a

crime involving the infliction of serious harm, not a certainty, in order to use deadly force.  Garner, 471 U.S. at 11-12.

According to the plaintiff and her expert, the police should have disregarded any suspicion that when Lile came out of the garage he might be armed and willing to shoot the police.  The plaintiff's expert testified Sgt. Davidson and Officer Wells, instead of training their weapons on Lile with both hands, should have been talking on the radio (Gaut depo., p. 91), making easy targets out of Davidson and Wells for someone like Lile, who had just committed murder and had nothing to lose by shooting the police to get away.

The police had probable cause as a matter of law to use deadly force to stop Lile.  Lile was a threat to the police officers on the scene, Andrea Browell, neighborhood residents, and the general public; he was a dangerous and violent felon trying to get away.  The plaintiff's expert William Gaut testified the police should not have used deadly force but also testified as follows:

> Q.      Well, I'm going to ask you again.  Do you have a – you have no opinion regarding whether the police used excessive force against Lile?
>
> A.      I haven't been asked to – to analyze the case in those terms.
>
> Q.      Okay.  So at this point you don't have an opinion regarding that?
>
> A.      I don't have an opinion one way or the other.  If I were asked to do that, I would consider doing it.

(Gaut depo., p. 217).

Gaut's opinions amount to incorrect conclusions of law and do not create an issue of fact regarding whether the police had probable cause to use deadly force to stop Lile.  He was a violent fleeing felon who came to Browell's home armed, broke into her house, shot her son, got her car keys, knocked her in the head until she lost consciousness, and took her as hostage as he attempted to speed away in her car.  Under the factors set forth in Graham  v. Conner, 490 U.S. 386, 396

5

(1989) (severity of the crime, whether the suspect posed an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight), the use of force by Davidson and Wells was clearly justified.  The factors justifying the use of deadly force as set forth in Graham  were also clearly present.

    **C)**  **Defendants Did Not Violate Browell's Constitutional Rights By Not Setting Up a Roadblock, Stop Sticks, an Outer Perimeter or Other Tactics**

   Browell offers testimony from her expert that the police should have established an outer perimeter, used a roadblock, or set out stop sticks to stop Lile.  Gaut's testimony, even if admissible, describing tactics he believes should have been carried out, does nothing to establish that Browell's constitutional rights were violated under the Fourth Amendment or that her substantive due process rights under the Fourteenth Amendment were violated.  Courts recognize the police must make quick decisions where the situation is fluid, uncertain, and dangerous.  Schaefer v. Goch,  153 F.3d 793 (7th Cir. 1998); Graham v. Connor, 490 U.S. 386 (1989).  From the time the police arrived on the premises to the time the garage door opened was approximately two minutes (Davidson aff., para. 6).  From the time the garage door opened to the time Davidson started firing his weapon it was a matter of seconds, about 10 to 15 seconds (Davidson aff., para. 6).   There was no time to set up an outer perimeter, talk on the radio, or do anything but aim weapons at Lile and shout commands at Lile to stop.

   Generally, the second guessing of an officer's conduct in leading up to a lawful seizure has been rejected as a basis for imposing liability under the Fourth Amendment.  In Carter v. Buscher, 973 F.2d 1328 (7th Cir. 1992), the Illinois State Police concocted an elaborate scheme to entice a suspect out to the open road to effect an arrest by state police officers posing as stranded motorists. Id. at 1330.  The scheme did not work and the subsequent gunfight left the suspect and a police officer dead and another police officer wounded.  Id.  The suspect's estate brought an action against

6

the officers involved.  The estate alleged that the suspect's Fourth Amendment rights had been

violated when the officers created a forseeably dangerous situation in which to arrest the suspect.

Id. at 1331.  Rejecting the plaintiff's argument that the Fourth Amendment prohibits creating

unnecessarily dangerous circumstances in which to effect a legal arrest, the court stated that the

"Fourth Amendment prohibits *unreasonable seizures* not unreasonable, unjustified or outrageous

conduct in general."  Id. at 1332 (emphasis in original).  To the extent that plaintiff argues that these

defendants created a dangerous situation in which to effect the arrest of Lile, she has no

constitutional claim.

Theories similar to those of plaintiff were also raised and rejected in Plakas v. Drinski, 19

F.3d 1143 (7th Cir. 1994).  Plakas involved a situation which began with an intoxicated or otherwise

incapacitated man driving his vehicle into a ditch and abandoning it.  Following a series of events

which included an escape, an attack on an officer and a foot chase, decedent Plakas ended up in a

clearing in a woods, surrounded by several officers.  After attempts to convince Plakas to lay down

his weapon failed (he was armed with a fireplace poker), Plakas advanced on a deputy sheriff

(Drinski), preparing to strike him with the poker.  The deputy fired his weapon, striking Plakas with

one bullet.  Plakas subsequently died.  Id., 19 F.3d at 1146.

After rejecting the plaintiff's attempts to undermine the officers' versions of the events by

citing minor discrepancies ("the tree-sampling discrepancy is of the sort on which popular

conspiracy theories are built, but it is not enough to allow a rational trier of fact to decide against

Drinski."), id. 19 F.3d at 1147, the court moved on to consider the plaintiff's argument that

alternative methods could have been used to subdue Plakas, the same argument plaintiff makes here.

As here, Plakas  argued that non-lethal methods such as chemical sprays or dogs should have been

considered.  Id. at 1148.  But the court found that the "Fourth Amendment does not require officers

to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the officers actually did was reasonable." Id. at 1149. When considering the reasonableness of the conduct, the court focused on the time frame of when the force was used.

> We always judge a decision made, as Drinski's was, in an instant or two. It is true we consider the whole of the event as it appears to the officer involved, but we recognize that the decision to shoot can only be made after the briefest reflection, so brief that "reflection" is the wrong word. As Plakas moved toward Drinski, was he supposed to think of an attack dog, of Perras's CS gas, of how fast he could run backwards? Our answer is, and has been no, because there is too little time for the officer to do so and too much opportunity to second-guess that officer.

Id. at 1149.

The court then went on to consider whether the steps taken by the officers prior to the use of force were generally constitutionally reasonable, not whether there were alternative steps which could have been taken.

> All of this means Drinski was properly standing in the clearing, gun in hand, several feet away from Plakas, who charged him with the poker raised. It is from that point on that we judge the reasonableness of the use of deadly force in light of all the officer knew. We do not return to prior segments of the event and, in light of hindsight, reconsider whether prior police decisions were correct. Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred. This is what we mean when we say we refuse to second-guess the officer. Here we agree that the undisputed facts lead to but one conclusion, that Drinski's use of deadly force was reasonable given Plakas's act of aggression and Drinski's knowledge of what had gone on before.

Id., 19 F.3d at 1150.

More recently, arguments similar to those advanced by plaintiff were made in Franklin v. Manek, 2004 WL 1629544 (S.D. Ind., 6/8/2004). Franklin involved a case where police were called to a domestic dispute and decedent Franklin was shot when he pulled a gun on police officers. His estate argued that the officers should have made contact with the victim and, upon learning more about Franklin, set up a perimeter around the residence in order to attempt to negotiate with him.

8

Judge Tinder rejected the argument, noting that "pre-seizure conduct is not subject to Fourth Amendment scrutiny," citing Carter, supra. Id. at *6.

Plaintiff invites the court to engage in second guessing of pre-seizure conduct condemned in Plakas and to speculate that a different result may have occurred. For example, plaintiff claims that the 15-second period between the time the garage door opened and the Lafayette officers fired at the tires could have been better spent on the radio to Tippecanoe officers advising them of a hostage. Again, this suggestion is made with the benefit of 20/20 hindsight and months (not seconds) of reflection. Yet, given the amount of speculation involved, it is still unclear as to which course would have been preferable. Had the officers been successful in shooting the tires, would Lile have surrendered and no harm inflicted on anyone? The possibilities inherent in such speculation form the basis for the courts' refusal to second-guess the decisions of police officers leading up to a seizure.

Even if Gaut's opinions offered sound police procedures, which they do not, they are not sufficient to establish a constitutional violation because Section 1983 protects plaintiffs "from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." Scott v. Edinburg, 346 F.3d 752 (7th Cir. 2003), citing Pasiewicz v. Lake County Forest Preserve Dist., 270 F.3d 520, 526 (7th Cir.2001); Soller v. Moore, 84 F.3d 964, 969 (7th Cir. 1996) (rejecting evidence of police department policies as irrelevant in the Fourth Amendment reasonableness analysis); Ford v. Childers, 855 F.2d 1271, 1272-73 (7th Cir. 1988) (upholding a district court's denial of a new trial after granting a directed verdict for defendant police officer even though plaintiffs introduced evidence of violations of police practices and police manual policies); Smith v. Freland, 954 F.2d 343, 348 (6th Cir. 1992) (adopting the approach of Ford v. Childers, limiting inquiry to whether the defendant violated Garner, not local police rules and practices).

Finally, Browell argues the police are not entitled to use deadly force where "the officer created the situation which required the use of deadly force," <u>citing</u> <u>Estate of Starkes v. Enyart,</u> 5 F.3d 230, 234 (7th Cir. 1993) (Ptlff's. resp., p. 16). The Seventh Circuit in <u>Starkes</u> held the defendant officer was not entitled to qualified immunity because of a factual dispute. In <u>Starkes</u>, the plaintiff stole a taxi. Police converged upon him and ordered him out of the car, but he refused to comply. An officer jumped in front of the vehicle after the plaintiff tried to drive off. He still attempted to drive away and was then shot by police. He was not a violent felon. "The defendants knew that the underlying crime was not accomplished violently." <u>Id</u>. at p. 233. The action of the police officer jumping in front of the car created the justification for using deadly force. This created an issue of fact whether the use of deadly force was reasonable.

<u>Starkes</u> has no application here because Lile was a violent fleeing felon. The circumstances justifying the use of deadly force were created prior to any action by the Lafayette police. No officer jumped in front of Lile in order to create grounds for use of deadly force; these grounds existed once it became apparent Lile was a violent fleeing felon. In fact, Davidson had to jump out of the way and Dilling had to move back to avoid being hit by the car Lile was driving. Defendants were entitled to use deadly force against Lile and the <u>Starkes</u> case does not apply.

The circumstances justifying the use of deadly force were not created by the officers. Plaintiff's attempt to second-guess the pre-seizure decisions of the police states no issue under the Fourth Amendment. The Lafayette officers are entitled to summary judgment.

**D)**      <u>**Davidson Cannot Be Liable Under Section 1983 Due To Alleged Negligence and/or Constitutional Deprivations of Deputies Huber and Conn**</u>

Browell next argues Davidson and Wells violated Browell's constitutional rights on the assertion that Davidson allowed Huber to shoot at Lile (Pltff's resp., p. 17). Browell's allegations that Davidson shouldn't have allowed Huber or Conn to shoot, that he should have radioed "there is a hostage" and that he should have instructed officers to set up an outer perimeter, are allegations of negligence which are irrelevant to the Section 1983 claims.

There is no basis for supervisory liability under section 1983. Plaintiff cites no authority which imposes individual liability upon a supervisor under section 1983 for condoning a constitutional deprivation by an officer where the officer is not even a subordinate of the supervisor. Davidson was employed by LPD and deputy Huber was employed by the Sheriff of Tippecanoe County. Davidson may have been respected as the highest ranking officer on the scene but he was not Huber's supervisor.

Even if he had been, to establish supervisory liability the supervising official must have "some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." <u>Doyle v. Camelot Care Centers</u>, 305 F.3d 603, 614-15 (7th Cir. 2002). "Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not personally involved . . . Rather, supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." <u>Gossmeyer v. McDonald</u>, 128 F.3d 481, 495 (7th Cir. 1997), <u>quoting</u> <u>Lanigan v. Village of East Hazel Crest</u>, 110 F.3d 467, 477 (7th Cir. 1997). Gross negligence is not enough either. <u>Jones v. City of Chicago</u>, 856 F.2d 985, 992 (7th Cir. 1988).

The only Seventh Circuit case cited by the plaintiff is <u>Chavez v. Illinois State Police</u>, 251 F.3d 612 (7th Cir. 2001). Omitted from the plaintiff's brief is that the court affirmed summary

11

judgment, holding there was no supervisory liability in a Section 1983 claim alleging racial profiling during drug interdiction and traffic stops. Id. at pp. 651-653. The plaintiff also cites Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989). In Gutierrez-Rodriguez, four officers in an unmarked police car near San Juan, Puerto Rico, who were in plain clothes, exited their vehicle and approached a car with guns drawn. The plaintiff, who was regularly employed and pursuing studies at the university, was parked with his girlfriend, admiring the night scene of San Juan visible in the distance. When Gutierrez saw unidentified men with firearms approaching his car, he started the engine and began to drive away. Without warning, the officers fired at the car and a bullet struck the Gutierrez in the back. The court, after a jury verdict, held there was a sufficient basis to find that the supervisor possessed a callous or reckless indifference to the rights of those with whom Officer Soto would come into contact. The Gutierrez case is not analogous to the present case.

Here, there is no evidence in the record Davidson directed Huber to fire his rifle. Davidson could not presume to know where exactly Huber was or that he would fire his weapon to stop Lile. The incident occurred in a matter of seconds and there was no time to do anything but try to stop Lile when he drove out of the driveway and down the street. There is simply no basis by which to hold Davidson potentially liable under Section 1983 based upon personal involvement in the accidental shooting of Browell or knowingly condoning a subordinate's activity which gave rise to the alleged constitutional deprivation. See Easley v. Reuss, 2005 WL 3448061 *4 (E.D. Wis. 2005) ("The plaintiff has introduced nothing in the record showing that Russ personally participated in the shooting of Easley, or that he directed Officer Kirmsee to shoot him, or that he had knowledge of and acquiesced in Kirmsee's actions . . . . There is nothing to raise an inference that Sgt. Russ knew

12

that Officer Kirmsee would shoot Easley, and there is nothing to show that Russ could have intervened to prevent the shooting.").

Also, even assuming Huber violated the plaintiff's constitutional rights, which he did not, Davidson did not direct Huber to shoot Lile and did not know Huber was going to shoot at Lile. The plaintiff's allegations against Davidson in this regard cannot be categorized as anything more than alleged negligence and Browell's claim of supervisory liability under Section 1983 against Davidson should be dismissed.

**E)      There Are No Facts Which Create A Genuine Issue Regarding   Browell's Fourteenth Amendment Claim**

The plaintiff argues Sgt. Davidson and Officer Wells' conduct "shocked the conscience." The plaintiff argues there is an issue of fact in this regard because she claims Davidson and Wells knew Browell was in the car and that shooting their weapons would endanger the lives of innocent bystanders, Browell, and other officers.  These facts do not support any claim that Davidson and Wells acted with no legitimate law enforcement purpose with intent to harm Browell.  Accordingly, her Fourteenth Amendment claim fails and should be dismissed.  Troupe, supra, 419 F.3d at 1167.

**F)      The Lafayette Police Officers are Entitled to Qualified Immunity**

As is the case in her argument on the claim of excessive force, plaintiff bases her argument on qualified immunity on the assumption that a suspect who has just committed murder, is in the process of kidnapping a hostage, disregards commands of armed police officers to surrender and flees in a vehicle poses no immediate threat of danger to anyone.  This is a dubious assumption, even when supported by an expert.

As to whether the Lafayette police officers seized anyone, plaintiff cites no authority indicating that it was clearly established that they did.  The prevailing law is to the contrary. "'[N]either usage nor common-law tradition makes an attempted seizure a seizure.'"  Troupe, supra,

13

419 F.3d at 1167 quoting Hodari D., 449 U.S. at 626 n. 2 (emphasis in original).  Contrary to plaintiff's assertion, the law is not clearly established that a hostage is subjected to a seizure under the Fourth Amendment when she is not the subject of direct physical force intentionally applied. Plaintiff cites Jamieson v. Shaw, supra and Fisher v. Memphis, supra as clearly establishing the law (response, p. 22).[1]  The defendants counter with Troupe, supra; Childress, supra; Mederios, supra; and Landol-Rivera, supra.  A split among circuits regarding the constitutionality of conduct analogous to the conduct in question is an indication that the right was not clearly established at the time of the alleged conduct.  Denius v. Dunlap, 209 F.3d 944, 950 (7th Cir. 2000).

In respect to the question of whether shooting at the vehicle in this case constitutes a reasonable seizure under the Fourth Amendment, plaintiff maintains that Tennessee v. Garner and Graham v. Connor, 490 U.S. 386 (1989), clearly established the law in this area.  In Brosseau v. Haugen, 543 U.S. 194, 199-200 (2004), the Supreme Court held that Garner and Graham were "cast at a high level of generality" and are incapable of clearly establishing the law regarding whether an officer should "shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight."  Id. at 199-200.

Again, based on plaintiff's assumption that a fleeing murder/hostage taker poses no immediate threat to anyone, plaintiff cites numerous cases involving persons fleeing from police for minor offenses and traffic violations in which courts have found either that the use of deadly force was unreasonable or, at least, a question of fact as to the reasonableness of the force.  For the most part, plaintiff cites no case which involved the flight of a person of whom the police had probable cause to believe had "committed a crime involving the infliction of threatened infliction of serious harm."  Garner, 471 U.S. at 11-12.  Cf. Ford v. Childers, 855 F.2d 1271, 1275 (7th Cir. 1988)

---

[1]Plaintiff also cites Keller v. Frink as authority as well, but district court opinions do not clearly establish the law.  Anderson v. Romero, 72 F.3d 518, 525 (7th Cir. 1995).

(reasonable to shoot fleeing bank robber who had threatened serious harm, was believed to be armed and to pose threat to others if not immediately apprehended).

The exception is <u>Craighead v. Lee</u>, 399 F.3d 954 (8th Cir. 2005) (response, p. 23). <u>Craighead</u>, however, was decided after the events in question here and, therefore does not contribute to the clearly established law at the time of the incident.  In any event, the issues of fact in <u>Craighead</u> involved whether the innocent party with whom the murder suspect was struggling had disarmed the suspect and whether the training of the officer would have made him aware that firing a shotgun at two men struggling was as likely to kill the innocent as the suspect.  <u>Id.</u> at 962.  Of course those factual questions are not present here.

Plaintiff does not cite to any authority which would indicate that the conduct of the Lafayette police officers in firing at the tires, attempting to arrest Lile, was in any fashion conscience-shocking for purposes of a Fourteenth Amendment claim.  <u>Cf. Troupe</u>, 419 F.3d at 1167.

If the law prohibits police officers from firing at tires to prevent the escape of a suspected murderer and hostage taker who is set upon avoiding capture via vehicular flight, such prohibition was not clearly established in November of 2004, and the Lafayette police officers are entitled to qualified immunity.

**G)       <u>There Is No Basis For Municipal Liability</u>**

Browell argues in support of her municipal liability claim that inadequacy of training shows a deliberate indifference to the rights of persons with whom the police came into contact with respect to deadly force (pltff's. resp., p. 28).  The plaintiff cites her expert's testimony offering his opinion that 80% to 90% of police departments have a policy which states that an officer will not shoot at a moving vehicle (pltff's. resp., p. 28).  The defendants have moved to strike Gaut's opinion

because he testified it is based on an extrapolation from police departments with which he is familiar. It could therefore be based on one department or ten departments or some other unknown number. Gaut's opinion is not based upon any survey or study. In any event, it does not establish inadequate training to support a municipal liability claim.

The plaintiff also cites Gaut's opinion that the officers exhibited a deliberate disregard for Browell's safety (pltff's. resp., p. 28). Again, defendants have moved to strike Gaut's opinion because it is a legal conclusion. Gaut's legal conclusion does not establish a genuine issue as to a material fact regarding municipal liability.

The plaintiff has failed to offer any evidence that the City's policymakers were deliberately indifferent to a pattern of constitutional violations which resulted from inadequate training of the police. Hirsch v. Burke, 40 F.3d 900, 904 (7th Cir. 1994). As discussed in their initial brief, the Lafayette officers were well trained in the use of deadly force. The plaintiff has failed to offer any evidence supporting her municipal liability claim.

**H)      Huber and Conn Were Not "Borrowed Servants" of the City of Lafayette**

Browell argues that the city is liable for any tort committed by the Tippecanoe County deputies via *respondeat superior*. In support she cites the "borrowed servant" doctrine and characterizes the city as a "special employer" of Huber and Conn.

The borrowed servant doctrine, which is typically applied in construction-related claims, provides "that an employee while generally employed by one party may be loaned to another in such a manner that the special employer may be responsible for the acts of the employee under the doctrine of *respondeat superior*." New York Cent. R. Co. v. Northern Indiana Public Serv. Co., 221 N.E.2d 442, 446 (Ind. App. 1996); Farr v. Laidig Concrete, Inc., 810 N.E.2d 1104, 1106 (Ind. App. 2004).

16

The borrowed servant doctrine has no application here.  Huber and Conn were not "loaned" to the city, and even in multi-jurisdictional undertakings, such as drug task forces, the individual members remain obliged to follow the rules and regulations of their respective agencies.  <u>Eversole v. Steele</u>, 59 F.3d 710, 716 (7th Cir. 1995). Even were there an interlocal agreement in place for a specified undertaking, under the Indiana statute pertaining to interlocal agreements a governmental entity which provides law enforcement personnel to another agency remains responsible for the conduct of its personnel.  Ind. Code § 36-1-7-7(a)(2).

Huber and Conn were employed by the county sheriff, not the city.  Their appearance at the scene did not transform them into employees or agents of the city, any more than would officers from different jurisdictions become agents of each other's employer simply because they appeared at the scene of an occurrence.  They were not "borrowed servants" nor was any agreement or arrangement in place whereby the sheriff "loaned" Huber and Conn to the city for an operation. Browell's entire contention is without merit.

**I)**      **Defendants Are Immune Under Ind. Code § 34-13-3-3(8); There is No Direct Action Under the Indiana Constitution**

Defendants incorporate by reference arguments raised in reply by Huber, Conn and Tippecanoe County at pp. 13-15 of their reply brief.

**CONCLUSION**

The defendants, Thomas Davidson, John Wells, and the City of Lafayette, respectfully request the Court enter summary judgment in their favor and against the plaintiff.

Respectfully submitted,

*s/ Mark A. Holloway*

Mark A. Holloway, Attorney No. 16750-49
Attorney for defendants, City of Lafayette,
Thomas Davidson and John Wells, individually
and as police officers of the City of Lafayette

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2008, a copy of this document was filed electronically. Notice of this filing will be sent to the following persons by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

William E. Emerick
wee@stuartlaw.com
Barry L. Loftus
bll@stuartlaw.com
STUART & BRANIGIN
300 Main Street, Ste. 900
P. O. Box 1010
Lafayette, IN  47902-1010

Douglas J. Masson
djm@hlblaw.com
HOFFMAN LUHMAN & MASSON, PC
201 Main Street, Ste. 700
P. O. Box 99
Lafayette, IN  47902-0099

*s/ Mark A. Holloway*
Mark A. Holloway

STEPHENSON MOROW & SEMLER
8710 N. Meridian Street
Suite 200
Indianapolis, Indiana 46260
Telephone:  (317) 844-3830
Fax: (317) 573-4194
Email:  mholloway@stephlaw.com
05-5247/tjr.bb