UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ANDREA LYNN BROWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 4:06-CV-142-AS-PRC |
| ) | |
| THOMAS DAVIDSON, individually and as a police ) | |
| officer for the City of Lafayette, JOHN WELLS, ) | |
| individually and as a police officer for the City of ) | |
| Lafayette, JOE CONN, individually and as a police officer ) | |
| for Tippecanoe County, JASON HUBER, individually and ) | |
| as a police officer for Tippecanoe County, CITY OF ) | |
| LAFAYETTE, and TIPPECANOE COUNTY SHERIFF'S ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendants Officer Thomas Davidson ("Davidson"), Officer

John Wells ("Wells"), and the City of Lafayette's ("Lafayette") Motion for Summary Judgment (Doc.

No. 33), and on Defendants Deputy Joe Conn ("Conn"), Deputy Jason Huber ("Huber"), and the

Tippecanoe County Sheriff Department's ("Sheriff's Department") Motion for Summary Judgment (Doc.

No. 31). Plaintiff, Andrea Lynn Browell ("Plaintiff" or "Ms. Browell"), responded to the Motions for

Summary Judgment (Doc. Nos. 44 and 45), upon which Defendants Conn, Huber, and the Sheriff's

Department filed a Motion to Strike (Doc. No. 49), and Defendants Davidson, Wells, and Lafayette filed

a Motion to Strike (Doc. No. 52) portions of Plaintiff's assertions of fact. Oral arguments were twice

heard on these motions in Lafayette, Indiana on October 29, 2008 and December 12, 2008. Careful

consideration has been given to the parties' positions.

For the reasons set forth below, Defendants' Motions to Strike (Doc. Nos. 49, 52) are **DENIED**, and Defendants' Motions for Summary Judgment (Doc. Nos. 31, 33) are **GRANTED**.

## I. INTRODUCTION

On November 20, 2006, Ms. Browell brought suit in Tippecanoe Circuit Court against the City of Lafayette and Officers Davidson and Wells, in their individual and official capacities, and against the Tippecanoe Country Sheriff's Department and Deputies Conn and Huber, in their individual and official capacities. The case was removed by Defendants to federal court on December 6, 2006. Specifically, Ms. Browell asserts claims against all of the Defendants under 42 U.S.C. § 1983 for violations of her rights under the Fourth and Fourteenth Amendments of the United States Constitution, and she asserts state law claims of assault and battery, negligence, intentional and negligent infliction of emotional distress, and violations of her constitutional rights under Article I, § 11 of the Indiana State Constitution.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex Corp.*, 477 at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue

for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper.

### III. FACTUAL BACKGROUND

This matter regards events that occurred on November 25, 2004, at Ms. Browell's residence, located at 35 McIntosh Court, Lafayette, Indiana. While Ms. Browell witnessed some of the events and initiated the 911 call to the police, she was later rendered unconscious by her assailant, Bill Lile ("Lile"), leaving the Court to rely upon the responding officers' version of the events thereafter. However, the facts of the case are largely undisputed, and the question before the Court is whether Ms. Browell suffered a violation of her rights based on the following undisputed facts.

In the year prior to November 2004, Ms. Browell and Lile were involved in a personal relationship, during which Lile had made threats of violence against Ms. Browell and her family. On Friday, November 19, 2004, Ms. Browell reported to the Lafayette Police Department that Lile had forced Ms. Browell into his car, drove out to the country, demanded sex, and used cocaine. Several days before the incident on November 25, 2004, Ms. Browell wrote and sent a letter by registered mail to Lile, asking that he leave her and her family alone.

Thereafter, on November 25, 2004, Thanksgiving Day, Ms. Browell saw Lile outside her house with a gun and she called 911. Lile then broke into Ms. Browell's house through a window in the

kitchen, while Ms. Browell told the dispatcher that Lile had entered her house with a gun. Inside the home, Lile shot Ms. Browell's son, Eric Gilley. Ms. Browell also relayed this information to the 911 dispatcher. Before the line went dead, Lile was overheard yelling for Ms. Browell's keys. The call with 911 was then dropped. Lile pulled Ms. Browell out from underneath the bed. Ms. Browell heard her son moaning, and she believed that he was dead or dying. Ms. Browell's last recollection that day was Lile pulling her down the hallway while she struggled to escape from him.

Sergeant Davidson was working the day shift as the commander and was at the Lafayette Police Department when Ms. Browell called 911. Davidson heard the dispatcher talking to Ms. Browell and overheard that someone had a gun and had shot the caller's son. Davidson, familiar with what Lile looked like and knowing that Lile was a convicted child molester, responded to the call. While en route to the scene, Davidson was told that the female caller had been whispering, that Lile was yelling at her for keys, and that she was grabbed just before the phone was disconnected.

Officer Wells was working the day shift on Thanksgiving Day as a uniformed patrolman when he was dispatched to Ms. Browell's residence. Wells learned from the dispatcher that the 911 caller was a female and had stated that a man shot her son. Wells also learned from dispatch that the man wanted some keys.

Upon arriving at Ms. Browell's residence, the officers of the Tippecanoe County Sheriff's Department and the Lafayette Police Department began setting up a perimeter around Ms. Browell's house[1] soon after she placed the 911 call. Davidson worked his way by foot along the east side of McIntosh and stationed himself at the southwest corner of the residence. Officer Wells arrived and was

---

[1]     McIntosh Court is a short street that runs north from Rome Drive before terminating in a cul-de-sac on the north end. Ms. Browell's residence is on the east side of the street, near the cul-de-sac.

4

positioned near Davidson, on the south side of the driveway. Both officers had their weapons drawn. Deputies Huber and Dilling also responded to the call. Huber positioned himself in the yard directly south of Ms. Browell's driveway, and Dilling was positioned on the north side of the driveway, near the garage and on the driver's side of the vehicle.

Within minutes, Dilling heard a car door close then heard the garage door open and saw a red Chevrolet Monte Carlo backing out. Dilling, who was in uniform, pointed his gun at the driver, Lile, and ordered him to stop. Dilling could see Lile's hands and did not see a weapon. Because Lile did not respond to Dilling's verbal commands, he kicked the driver's door and got Lile's attention. Lile turned and made eye contact with Dilling as Dilling continued to point his gun at Lile and ordered him to turn off the vehicle. Lile immediately turned his head back to the south and accelerated backward out of the driveway, causing Dilling to jump out of the way to avoid being injured. Dilling testified that while he was focused on Lile he did not see a passenger in the vehicle. Dilling did not know that Lile had kidnaped Ms. Browell and that she was slumped forward in the front passenger seat in an unconscious state.

As the vehicle accelerated backward, Wells (located on the passenger's side of the vehicle), noticed the back side of a female bent over in the passenger's seat, but he was unable to determine whether she was alive or dead. As the vehicle continued to back out of the driveway, ignoring Dilling's commands, Wells fired five shots at the left front tire.

Davidson, also located on the passenger side, saw the driver's face and recognized him as Bill Lile. Davidson also saw the hair of a female bent over in the passenger's seat, not moving. As the vehicle accelerated backwards toward the street, swerving around a pickup truck and toward Davidson, Davidson moved out of the way and fired 7 shots at the tires of the vehicle. Neither Davidson or Wells

5

radioed that a passenger was in the vehicle. None of the bullets fired by Davidson and Wells entered the passenger or driver compartment of the vehicle.

Lile, still refusing to stop, backed partially into the street and began heading south before completely entering the street. As Lile headed south, he veered off the east side of the street, and struck a mailbox and a pine tree. He then headed directly toward Huber, who took cover behind a tree. Before reaching Huber, Lile swerved back into the road and headed past him in a southern direction. As Lile passed, Huber fired 11 rounds aimed directly at Lile. Huber's shots hit the windshield, the driver's side door, the rear gas tank, and the driver's side window. Huber did not know Ms. Browell was in the car. After Huber fired the shots, Davidson radioed that shots had been fired and that the car[2] was traveling to Rome Drive.

Lile then approached Officer Conn, who was positioned on the northwest corner of McIntosh Court and Rome Drive. As Lile approached, Conn did not know that Ms. Browell was a passenger in the vehicle, and Conn shot at the vehicle twice from a kneeling position. One of Conn's shots struck the passenger's side rear view mirror and the other shot struck a nearby garage. Lile then turned right onto westbound Rome Drive, where he struck a Lafayette Police Department vehicle and flipped the Monte Carlo over onto its roof.

Conn climbed in the Monte Carlo to get Lile, and saw Lile's gun lying on the ceiling. Ms. Browell was upside down in the seatbelt, and both she and Lile needed medical attention. Ms. Browell sustained numerous injuries, including six gun shot wounds and injuries to her brain. She has no recollection of being put in the Monte Carlo, or of hearing or seeing the police on November 25, 2004.

---

2      Davidson mistakenly identified the car as a Chevy Cavalier.

Huber and Conn may not have fired their weapons had they known Ms. Browell was a passenger in the vehicle. (Huber Depo., p. 48; Conn Depo., p. 36).

Meanwhile, Wells remained at Ms. Browell's residence and walked through it to see if anybody else remained in the house. Wells saw broken glass and blood on the table and floor in the kitchen and in a bedroom he observed Eric Gilley lying on the floor covered with blood and not breathing. Wells could find no pulse.

Ms. Browell now sues due to the injuries that she personally sustained. She alleges that it was unlawful for Officers Davidson and Wells to "intentionally sho[ot] at the [Monte Carlo's] tires in order to avoid hitting the passenger," and that they unlawfully failed to warn the other officers that there was a passenger in the vehicle and failed to direct the other officers to set up an outside perimeter to prevent Lile's escape. Plf's Response, p. 10. Ms. Browell also alleges that it was unlawful for Deputies Huber and Conn to shoot at Lile to prevent his escape. *Id.* Ms. Browell contends that Lile did not pose an "immediate threat" to the officers or any other person when the officers fired, and that the officers had "other means available to them which could have been used" to prevent Lile, a fleeing felon, from escaping the scene. Plf's Stmt. of Genuine Issues, pp. 1, 4-7.

Of important note, Ms. Browell does not dispute that she was kidnaped and forced into her vehicle against her will by Lile, and that Lile shot and killed Ms. Browell's son.[3] Ms. Browell also admits that she does not recall anything that occurred after her struggle in the hallway with Lile, until she woke up later in the hospital.

---

[3] The Court of Appeals of Indiana affirmed Bill Lile's convictions for murder, Class A felony burglary, Class B felony robbery, Class B felony criminal confinement, and Class D felony resisting law enforcement, arising out of the events that occurred at Ms. Browell's residence on November 25, 2004, the subject of this civil lawsuit. *See, Lile v. State*, 857 N.E.2d 28 (Ind.App. 2006), *trans. denied.*

# IV. ANALYSIS

## A.      Motions to Strike

This Court has before it Motions to Strike filed by the Defendants (Doc. Nos. 49, 52). Essentially, Defendants seek to strike many conclusory statements, including statements made by Plaintiff's expert William Gaut, such as: alternative non-deadly force methods should have been utilized to apprehend Lile; Davidson and Wells should have informed the other officers of Ms. Browell's presence; Lile did not pose an immediate risk to anyone when the officers fired their weapons; Ms. Browell's injuries were the direct and proximate result of excessive force and improper police action; most police departments have polices prohibiting the shooting at a moving vehicle except under certain circumstances; the officers were not properly trained; and, the officers' use of deadly force in this instance was unreasonable. Because these statements merely represent Ms. Browell's position and/or Mr. Gaut's opinion in support of Ms. Browell's arguments, and do not pose a different version of the facts upon which this Court basis its ruling herein, the Court has resolved to let the record stand for purposes of summary judgment, and **DENIES** Defendants' Motions to Strike.

## B.      Motions for Summary Judgment

Defendants request judgment as a matter of law on the following claims: Ms. Browell's § 1983 claim that they deprived her of the rights guaranteed by the Fourth and Fourteenth Amendments; on her claim of municipal liability; and, on the assertion that Defendants committed various unlawful acts under the substantive law of Indiana.

### 1.      42 U.S.C. § 1983 Claims

To prevail under 42 U.S.C. § 1983, a plaintiff must establish that: (1) she had a constitutionally protected right, (2) she was deprived of that right in violation of the Constitution, (3) the defendant(s)

intentionally caused that deprivation and (4) the defendant(s) acted under color of state law. *See Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003); *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990).

In this case, there is no dispute that the Defendant officers were acting under color of state law. Furthermore, this is a case where the officers used deadly force to prevent the escape of a fleeing felon, Bill Lile, and it is claimed by Defendants that Mr. Lile posed an immediate threat to the safety of others. With that in mind, the Court turns to Ms. Browell's constitutional claims.

Fourth Amendment Claim

Before undertaking an analysis of the reasonableness of Defendants' actions, the Court must determine whether a seizure of Ms. Browell occurred during the attempt to subdue Lile. *Leaf v. Shelnutt*, 400 F.3d 1070, 1089 (7th Cir. 2005). If a seizure of Ms. Browell occurred, the question is then whether excessive force was used under the Fourth Amendment's "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Defendants Huber, Conn, and the Tippecanoe County Sheriff's Department rely on *Bublitz v. Cottey*, 327 F.3d 485 (7th Cir. 2003), in support of their position that no seizure of Ms. Browell occurred because there was no intent to harm her since the Defendants did not know Ms. Browell was a passenger. In *Bublitz*, the Seventh Circuit explained:

> The Supreme Court has stated that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is governmental termination of freedom of movement *through means intentionally applied.*" *County of Sacramento v. Lewis,* 523 U.S. 833, 844, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *Brower v. County of Inyo,* 489 U.S. 593, 596-97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original)). In light of *Lewis,* this Court has emphasized the distinction between "an accidental or

> tortious act which happens to be committed by a governmental official and an intentional detention that rises to the level of a constitutional violation." *Campbell v. White*, 916 F.2d 421, 422-23 (7th Cir. 1990) (citation omitted). In *Campbell*, we held, consistent with the rule of *Brower* and *Lewis*, that an officer's action in accidentally running over a fleeing suspect did not constitute a seizure, as the officer's action was not the "the means intentionally applied to effect the stop, but was rather an unfortunate and regrettable accident." *Id.* at 423 (citations omitted).

*Bublitz*, 327 F.3d at 489. In that case, the police officers were involved in a high-speed pursuit of a fleeing armed robber. In attempting to stop him by using a tire deflation device, his car ran over the spikes, veered across the highway, and collided into a minivan killing two of its passengers. The Court held that the Bublitz family was not the "intended object of the defendant officers' attempts to seize the fleeing [felon], so the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim." *Id.*

Defendants Davidson, Wells, and Lafayette rely on *California v. Hodari D.*, 499 U.S. 621 (1991) and *Brower v. County of Inyo*, 489 U.S. 593 (1989) to pose a similar argument that Ms. Browell was not seized by the officers even though they were aware of her presence in the car, because they did not use direct physical force against her, where none of their shots hit her or caused Lile to stop, and because she did not submit to their assertion of authority. *Hodari D.*, 499 U.S. at 626 (holding that no seizure occurs with respect to a show of authority or application of physical force, if the subject does not yield); *Brower*, 489 U.S. at 596-97, 599 (no constitutional seizure occurs where during a police chase the suspect unexpectedly loses control of his car and crashes by a means different than the means intentionally applied to terminate freedom of movement; yet, it is enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result).

10

Defendants Davidson, Wells, and Lafayette also rely on *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990) and *Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998) in support of their argument that no seizure took place where Ms. Browell was accidentally injured. In *Landol-Rivera*, the First Circuit concluded that no Fourth Amendment seizure occurred when a hostage was inadvertently shot during police pursuit of a robbery suspect, where the officer deliberately shot at the car for the purpose of stopping the robber's flight, because the plaintiff was not the object of the police bullet that struck him. *Landol-Rivera*, 906 F.2d at 795-96. In *Schaefer,* Kathy Nieslowski was accidentally shot by a police officer outside of her home in the officer's attempt to apprehend her husband. *Shaefer*, 153 F3d at 794-95. Mrs. Nieslowski had exited the home during a tense and armed stand-off, when officers ordered her to "get down" and she complied by laying on the floor of the porch. *Id.* Soon afterward, her husband exited the home with a shotgun and pulled Mrs. Nieslowski back toward the house. *Id.* Officers ordered Mr. Nieslowski to put down his gun, but he refused and the officers fired. *Id.* Their shots killed both Mr. and Mrs. Nieslowski. *Id.* The Seventh Circuit determined that even if Mrs. Nieslowski had been "seized" when she first complied with the officers' orders to get down, no such seizure could have continued while Mr. Nieslowski took physical control of her and pulled her back inside the house. *Shaefer*, 153 F3d at 796-97. Based on the termination of the officers' control, the Court reasoned, Mrs. Nieslowski could not be considered to have been "seized" by police within the meaning of the Fourth Amendment when she was shot. *Id.* Therefore, the Seventh Circuit's finding that Mrs. Nieslowski was not seized, was based on the fact that her husband had seized her and taken physical control of her at the time of the alleged Fourth Amendment violation, the shooting, occurred. *Id.* at 797.

Yet, Ms. Browell sees the situation differently here, and argues that she was seized according to *Brower*, where the United States Supreme Court determined that a seizure occurs "only when there is a

11

governmental termination of freedom of movement through means intentionally applied," *Brower*, 489 U.S. at 597. Ms. Browell argues that because the officers intentionally fired their weapons at the vehicle intending to bring the vehicle driven by Lile to a stop, and because they succeeded in bringing the vehicle to a stop, then a seizure of both Lile and the car's occupants occurred. In other words, since a seizure can occur even when "an unintended person or thing is the object of the detention"— in this case Ms. Browell was the unintended person detained— then it follows that she was seized when the car (in which she was a passenger) was intentionally stopped by the Defendants. In support of the argument, Plaintiff relies on the following additional cases: *Fisher v. City of Memphis*, 234 F.3d 312 (6th Cir. 2000) (holding that by shooting at the driver and the moving car, the officer intended to stop the car, effectively seizing everyone inside of it including the passenger); *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) (holding that the driver was seized when an officer shot at her vehicle to prevent her escape); *Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir. 1985) (holding that the intent to stop the car by use of a roadblock was enough to constitute a seizure of a passenger whose presence in the car was known); *Keller v. Frink*, 745 F.Supp.1428, 1432 (S.D.Ind. 1990) (determining that a seizure occurs when there is a (1) governmental (2) termination of movement (3) through means intentionally applied; and holding that since the first two elements are undisputed, it is up to the trier of fact to determine whether the officers' shooting at a van known to be occupied demonstrated an objective intent to stop it, constituting a seizure of the occupants).

The question before the Court is whether the Defendants' seized the unconscious hostage, Ms. Browell. No doubt this is a difficult issue, where no authority squarely mandates a particular result when dealing with the specific facts of police firing at a felon fleeing by way of a vehicle with an unconscious passenger taken hostage. While the Court greatly appreciate the high quality of briefing and oral

12

argument done by counsel on both sides, it finds that Defendants' position is the correct one for the reasons that follow.

As recently reiterated by the Seventh Circuit, a seizure of a person is generally defined in terms of an intentional limitation of a person's freedom of movement. *Bielanski v. County of Kane*, 2008 WL 5245997 (7th Cir. Dec. 18, 2008) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998) (a Fourth Amendment seizure occurs when there is governmental termination of freedom of movement by means intentionally applied); *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991) (a seizure of the person may be achieved by the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the person arrested; or, in the absence of physical force, by submission to a show of authority); *Belcher v. Norton*, 497 F.3d 742, 748 (7th Cir. 2007) (a person is seized for Fourth Amendment purposes when, from all of the circumstances surrounding the incident, a reasonable person in the situation would believe he or she was not free to leave; to demonstrate seizure, individuals must show that they were touched by the police or that they yielded to a show of authority, and the governmental termination of freedom of movement must be intentional)).

While Plaintiff's cases would support a finding that a seizure of the car is a seizure of all of its occupants, none of the cases relied upon by Ms. Browell involve a passenger that is, in fact, a hostage— one whose freedom was terminated by the hostage-taker and is in the car involuntarily. In fact, *Fisher*, specifically distinguishes its holding from cases dealing with hostage situations. *See Fisher v. City of Memphis,* 243 F.3d 312, 318 n. 3 (6th Cir. 2000) ("This situation is also different from cases involving hostages, where an officer is attempting to shoot one individual (the fleeing felon) and avoid another (the hostage).") (citing *Childress v. City of Arapaho,* 210 F.3d 1154, 1156-57 (10th Cir. 2000) (finding, that in a hostage shooting case, no Fourth Amendment "seizure" has occurred because "[t]he officers intended

to restrain the minivan and the fugitives, not [the hostages]"); *Medeiros v. O'Connell,* 150 F.3d 164, 167-68 (2d Cir. 1998) (endorsing *Landol-Rivera,* and holding that where a hostage is struck by an errant bullet, the governing principle is that such consequences cannot form the basis for a Fourth Amendment violation); *Landol-Rivera,* 906 F.2d 791 (1st Cir. 1990) (holding that a hostage injured when police fired at a suspect's getaway car was not "seized" for Fourth Amendment purposes)). Accordingly, *Schaefer*, although not concerning the attempt to stop a vehicle, bares some similarity to the present case in that it considers a hostage situation. Where the *Shaefer* Court found that the officers could not stop Mrs. Nieslowski's husband from taking physical control of her, thus no seizure occurred— here too, the officers were not in a position to stop Lile from taking physical control of the unconscious Ms. Browell at the time the shooting occurred. *Id.* Ms. Browell's freedom was terminated by Lile, not on account of the officers' gunfire. Thus, as in *Shaefer*, no seizure of Ms. Browell occurred.

Aside from the fact that Ms. Browell was taken hostage in a fleeing vehicle, for purposes of the Fourth Amendment analysis it is important to note that she was unconscious. It is undisputed that Ms. Browell does not recall any of the events involving the police leading up to her transport to the hospital. Ms. Browell was not even aware of the police being present, and she was surely not aware of her inability to leave. Thus, Ms. Browell could not perceive any restraint on her liberty or otherwise feel compelled to submit to a governmental show of force. *Belcher v. Norton*, 497 F.3d 742, 748 (7th Cir. 2007). *See also Leaf v. Shelnutt*, 400 F.3d 1070, 1089 (7th Cir. 2005) (citing *U.S. v Mendenhall*, 446 U.S. 544 (1980)). Therefore, Ms. Browell was not seized under the Fourth Amendment.[4]

---

4      The Court notes that the Defendants did not set up a roadblock to intentionally stop Lile, they fired at the vehicle to do so. Lile's freedom was terminated after he turned right onto Rome Drive and then unexpectedly collided with a Lafayette Police Department vehicle and flipped the Monte Carlo over onto its roof. *Brower,* 489 U.S. at 596-97, 599 (no constitutional seizure occurs where during a police chase the suspect unexpectedly loses control of his car and crashes by a means different than the means intentionally applied to terminate freedom of movement). It is uncontroverted that Davidson and Wells did not strike Ms. Browell, and that none

14

Assuming arguendo that a seizure occurred, the Court turns to the manner in which Ms. Browell was seized, to determine whether the application of force was reasonable.

Under the Fourth Amendment, the relevant inquiry is whether the officers' actions were objectively reasonable in light of the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner,* 471 U.S. 1 (1985). In *Tennessee v. Garner*, the Supreme Court outlined the principles for evaluating whether the use of deadly force is reasonable under the Fourth Amendment:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is a probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if where feasible, some warning has been given.

*Garner*, 471 U.S. 11-12. The fact-specific nature of whether an officer used excessive force depends on the totality of the circumstances surrounding the encounter. *Estate of Phillips v. City of Milwaukee*, 123 F.3d. 586, 592 (7th Cir. 1997).

Further, the officer's subjective belief or motivations are irrelevant. *See Graham*, 490 U.S. at 397 ("[E]vil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will...good intentions make an objectively unreasonable use of force constitutional."). The "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vison of hindsight." *Id.* at 396; *Bell v. Irwin,* 321 F.3d 637, 639 (7th Cir. 2003); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997). Moreover, the reasonableness

---

of the Defendants intended to hit Ms. Browell or cause an accident by means of physical impact. Aside from this, it has already been established that Ms. Browell was not seized.

calculation "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Consequently, "when an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002) (quoting *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (*en banc*) (emphasis omitted)).

Defendants argue that their use of deadly force was reasonable in light of their believing Lile to be armed and dangerous, his failure to surrender to police, and his posing a threat to officers and others. Plaintiff's counsel acknowledged during oral argument that Ms. Browell was in danger due to Lile and due to the Defendants' actions; yet, asserts that the use of force was unreasonable because Lile did not pose an "immediate threat" to the officers or any other person when the officers fired. Plaintiff argues that the present situation is unlike the situation in *Messer v. Indiana State Police*, 2008 WL 4889341 (N.D.Ind. Nov. 12, 2008) where the officers were in imminent danger due to Mr. Messer's aiming a shotgun at the officers. Here, Plaintiff suggests that Lile was not an imminent threat to anyone, and therefore it was more harmful for the police to attempt to stop Lile, than to let Ms. Browell be held hostage by him.

Plaintiff's argument fails to account for the facts. Ms. Browell called 911 due to Lile's being on her property with a gun— a man she had previously reported. Upon arriving at Ms. Browell's residence, Defendants were aware of Lile's breaking into Ms. Browell's home with a gun, shooting her son, and yelling at her for keys. Within minutes of arriving, Lile pulled out of the garage, to find a uniformed officer aiming a gun at him, yelling at him to stop, and kicking the door. Lile saw Dilling, and continued

16

to dodge him and the other officers in an attempt to escape arrest. Davidson and Wells saw Ms. Browell slumped over in the passenger seat and they, like the other officers on the scene who didn't know there was a hostage, attempted to stop Lile's flight. To suggest that Lile did not pose an immediate threat to Ms. Browell or to others, after breaking into a home and shooting a boy only moments earlier, is simply nonsensical. This Court holds that the actions of the officers amount to an objectively reasonable response to the escalating situation they faced. *See Estate of Phillips,* 123 F.3d at 593 (citations omitted). No reasonable jury could conclude that this violent fleeing felon and attempted murderer (at the time), likely armed and dangerous, did not pose an imminent threat to Ms. Browell and the community.[5] Although unknown to the officers at the time, Lile would later be convicted for his violent crimes.

Plaintiff also contends that Defendants had a duty to use alternative methods short of deadly force to resolve the situation before them, such as stop sticks, a roadblock, or creation of an outer perimeter. However, the Seventh Circuit supports the assertion that, where deadly force is otherwise justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first. *See Plakas v. Drinski,* 19 F.3d 1143, 1148 (7th Cir. 1994). The Fourth Amendment does not require the use of the least or even a less deadly alternative, so long as the use of deadly force is reasonable under *Garner v. Tennessee* and *Graham v. Connor. See Plakas,* 19 F.3d at 1149. As the Seventh Circuit has held:

> We do not return to the prior segments of the event and, in light of hindsight, reconsider whether the prior police decisions were correct. Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred. This is what we mean when we say we refuse to second-guess the officer.

---

5    "When the crime is flight to avoid apprehension, what is only a risk for escape becomes a certainty. Bystanders are in particular jeopardy. Collisions between fleeing vehicles and pedestrians or others who get in the way are common." *U.S. v. Howze,* 343 F.3d 919, 922 (7th Cir. 2003) (citations omitted).

*Plakas,* 19 F.3d at 1150. When the record is examined fully and in the necessary detail, this Plaintiff remains hard pressed to make an argument in her favor on the merits. Here, this Court finds that the undisputed facts can lead it to but one conclusion, that Defendants' use of deadly force was reasonable given Lile's deadly rampage.

As far as Plaintiff's claim that more should have been done, such as warning the other officers of Ms. Browell's presence as a hostage, this is not enough to establish an intentional deprivation of a constitutional right under 42 U.S.C. § 1983. As a basic and fundamental matter, it must be remembered that the standards required under 42 U.S.C. § 1983 require something more than mere negligence. *See Davidson v. Cannon,* 474 U.S. 344 (1986); *Daniels v. Williams,* 474 U.S. 327 (1986).

In making this determination, this Court has also given very close personal attention to *Tennessee v. Garner,* 471 U.S. 1 (1985), as well as to an overwhelming array of decisions in this circuit dealing with the concept that inheres in *Tennessee.*[6]

---

6    *See Chelios v. Heavener,* 520 F.3d 678, 689 (7th Cir. 2008) (reversing the grant of summary judgment in favor of defendant officer, police chief, and the municipality on the grounds that factual issues existed as to whether the claimant made physical contact with the officer, had committed a crime, or resisted arrest); *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007) (affirming the grant of summary judgment in favor of defendants for Fourth Amendment violation where defendant resisted a lawful arrest and believed he had his hand near the officers' loose gun, and while plaintiff asserted a different version of the facts, failed to offer affirmative evidence to corroborate those facts; and noting that Fourth Amendment rights are personal rights which may not be vicariously asserted) (citations omitted); *Sallenger v. Oakes,* 473 F.3d 731, 739+ (7th Cir. 2007) (affirming the denial of summary judgment on unreasonable force claims where defendant officers used closed fist blows and a flashlight on the defendant who was handcuffed, unarmed, did not commit a crime, and stopped moving at some point in time); *Acevedo v. Canterbury,* 457 F.3d 721, 724+ (7th Cir. 2006) (reversing district court's judgment as a matter of law in favor of officer after trial and finding that the officer's blow to the defendant's face causing him to fall down and black out may have constituted a seizure for purposes of excessive force); *DeLuna v. City of Rockford, Ill.,* 447 F.3d 1008, 1010 (7th Cir. 2006) (affirming the grant of summary judgment in favor of the officer who responded to a domestic disturbance dispatch, and once at the residence and prior to the shooting, the decedent's wife told the officer not to shoot because he had nothing in his hands, but at the time of the shooting, the officer was presented with a suspect who had a history of violence, and who was known to both carry and sell weapons, who may have possessed a weapon in the back of his waistband, and was acting in an irrational manner, appearing shirtless and disregarding repeated instructions to raise his hands and to stop but instead continued his approach towards the officer making statements that he "had something for" the officer and that the officer was going to have to kill him); *Abdullahi v. City of Madison,* 423 F.3d 763, 768+ (7th Cir. 2005) (reversing the grant of summary judgment in favor of the officers and city for excessive force claim noting that for summary judgment purposes a court may not assess the credibility of

18

witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence); *Morfin v. City of East Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003) (reversing the district court's grant of summary judgment in favor of arresting officers for an excessive force claim because disputed facts existed where plaintiff stated that he did not resist arrest but was peaceful and cooperative; noting that the existence of probable cause to arrest precludes a § 1983 claim for false arrest/imprisonment); *Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003) (affirming grant of summary judgment on the grounds that the officer's use of deadly force to effect an arrest was reasonable where it was undisputed that there were persons in the immediate vicinity in imminent danger of death or serious bodily injury as the fleeing felon attempted escape in an automobile; noting that the timing of the first and fatal shots, not later shots, are critical to determining whether there is an immediate threat to the officer at the time deadly force is used); *McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003) (affirming the grant of summary judgment in concluding that there was no seizure of the plaintiff and thus no Fourth Amendment claim where there was no evidence to show the officer intended to or did acquire physical control over the plaintiff's person, nor was there a show of authority and restraint of the plaintiff's movements) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *Brower v. Inyo County*, 489 U.S. 593, 596 (1989)); *Bell v. Irwin*, 321 F.3d 637, 639+ (7th Cir. 2003) (affirming the grant of the officers' summary judgment motion for a claim of excessive force when the officers used beanbag rounds and injured the arrestee); *Muhammed v. City of Chicago*, 316 F.3d 680, 683+ (7th Cir. 2002) (affirming grant of summary judgment in favor of the officers noting that the robber's identity was irrelevant where the officers knew that a robbery had been committed and the decedent subsequently threatened the officers with a gun, and finding that the second round of shots fired was lawful where the plaintiff failed to identify any specific eyewitness testimony or other impeachment evidence that contradicted the officer's testimony that the decedent aimed his gun at the officer); *Pena v. Leombruni*, 200 F.3d 1031, 1033+ (7th Cir. 1999) (affirming directed verdict in favor of the sheriff and summary judgment upon a jury verdict for the other defendants in a § 1983 excessive force action because the fleeing, shop-lifting, concrete-wielding assailant posed a potentially lethal danger); *Deering v. Reich*, 183 F.3d 645, 650+ (7th Cir. 1999) (affirming jury verdict in favor of officer and noting that the totality of the circumstances include what the officers know about the suspect at the time and the events that occurred around the time of the shooting); *Mays v. City of East St. Louis, Ill.*, 123 F.3d 999, 1000+ (7th Cir. 1997) *abrogated by County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (holding that the Fourth Amendment reasonableness standard did not apply to a § 1983 claim where the police pursuit did not constitute a seizure of the passenger); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592+ (7th Cir. 1997) (affirming grant of summary judgment concluding that neither the city nor the police officers' supervisor can be held liable on a failure to train theory or on a municipal policy theory absent a finding that the individual police officers are liable on the underlying substantive claim) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)); *Frazell v. Flanigan*, 102 F.3d 877, 882 (7th Cir. 1996), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 195 (2001) (holding that an officer may be immune from damages even if the court has found him liable for objectively unreasonable conduct); *Plakas v. Drinski*, 19 F.3d 1143, 1146 (7th Cir. 1994) (affirming summary judgment in favor of officer and county for excessive force claim finding that the officer was faced with a man who had, minutes before, attacked another police officer with a dangerous weapon, had refused several entreaties to disarm, had told the officer that one of the two would die that night, and then had moved toward the officer while raising his weapon to strike; also noting that the award of summary judgment to the defense in deadly force cases may be made only with particular care where the officer defendant is the only witness left alive to testify and the only person likely to contradict the officer is beyond reach, and therefore a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial); *Donovan v. City of Milwaukee*, 17 F.3d 944, 949+ (7th Cir. 1994) (affirming summary judgment in favor of the City as to plaintiff's *Monell* claim, and in favor of the officer entitled to qualified immunity in using a deadman roadblock); *Ellis v. Wynalda*, 999 F.2d 243, 245+ (7th Cir. 1993) (reversing the grant of summary judgment where it was factually disputed whether the fleeing suspect posed an immediate threat when the officer shot him in the back and where there was no particular reason to believe that the suspect was armed); *Carter v. Buscher*, 973 F.2d 1328, 1331+ (7th Cir. 1992) (affirming summary judgment in favor of defendant officers

Long experience here teaches that individualized consideration of each case is the order of the day at the district court level of the federal judiciary. One can be assured that detailed consideration is precisely what has happened in this Court since *Messer v. Indiana State Police*, 2008 WL 4889341 (N.D.Ind. Nov. 12, 2008), *no appeal*. While the end result here is the same as the result in *Messer*, there are significant factual differences that have been carefully considered. Based on the facts in *this* case, and viewing the record in the light most favorable to the non-movant, Ms. Browell cannot demonstrate a Fourth Amendment violation.

### Fourteenth Amendment Claim

Apart from the Fourth Amendment analysis, it must be considered whether the Defendants' use of force was sufficient to "shock the conscience" so as to violate Ms. Browell's Fourteenth Amendment rights. The parties agree, and the Court finds, that the conscience-shocking standard is the proper standard to evaluate these Defendants' rapid, spur-of-the-moment decisions. *See Schaefer v. Goch*, 153 F.3d 793, 797-98 (7th Cir. 1998) (citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (applying substantive due process standards to a claim of arbitrary police action that was not encompassed by the Fourth Amendment, and holding that when government officers face the sort of unforeseen and rapidly changing circumstances that demand unreflective decisions with potentially grave consequences on every

---

as there was no Fourth Amendment violation in returning gunfire and noting that pre-seizure conduct is not subject to Fourth Amendment scrutiny); *Tom v. Voida*, 963 F.2d 952, 962 (7th Cir. 1992) (affirming the grant of summary judgment in favor of the officer for an excessive force claim where an innocent encounter with a teenage male ended in his death after the suspect twice fled, beat the officer's head, and threatened to continue doing so just prior to the officer's shooting the suspect); *Ford v. Childers*, 855 F.2d 1271, 1273+ (7th Cir. 1988) (affirmed grant of directed verdict in finding that the officers acted reasonably in firing shots at a bank robbery suspect fleeing the scene where the officers reasonably suspected he was armed and dangerous); *Sherrod v. Berry*, 856 F.2d 802, 805+ (7th Cir. 1988) (reversing and remanding for a new trial because district judge erroneously allowed the jury to be presented with facts unknown and unavailable to the officers at the time of the shooting, namely that the decedent suspect was unarmed); *Lester v. City of Chicago*, 830 F.2d 706, 710+ (7th Cir. 1987) (reversing grant of summary judgment requiring district court to use Fourth Amendment objective reasonableness standard, rather than substantive due process standard of the Fourteenth Amendment, in considering excessive force in arrest claim).

side, "even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates [the concerns of substantive due process]")).

The Court in *Lewis* instructs us that conscience-shocking behavior is likely to be found where the "conduct [is] intended to injure in some way unjustifiable by any government interest." *Lewis,* 523 U.S. at 849; *Steen v. Myers,* 486 F.3d 1017, 1023 (7th Cir. 2007) (stating "[w]e agree with our sister circuit [in *Graves v. Thomas,* 450 F.3d 1215, 1223-24 (10th Cir.2006)] in holding that even a minor traffic stop, and pursuit of a fleeing suspect after an unexplained flight from that stop, is a legitimate government interest.").

Defendants argue that Ms. Browell's substantive due process claim fails because there was no intent to cause her harm. In fact, Plaintiff concedes: "Although *none of the officers intended to shoot Browell*, all of the officers used deadly force thereby accepting the risk of causing serious bodily injury or death to any passenger . . .or an innocent bystander in the neighborhood." Plf's Response, p. 29 (emphasis added).

Thus, even assuming the officers knew Ms. Browell was in the car and did not warn the others of her presence, the officers' decisions to shoot at Lile does not meet the shocks the conscious standard. Here, the Defendants were faced with a dangerous and violent felon, who had just broke into Ms. Browell's residence and shot her son, and was attempting to resist arrest and flee the scene by driving erratically through the neighborhood. Clearly the officers were attempting to apprehend the likely armed Lile, a legitimate governmental interest, and not intending to harm Ms. Browell. Given the high-pressure, fluid, uncertain, and, above all, dangerous situation these Defendants faced, the officers' decision to shoot,

regrettable though Ms. Browell's injuries may be, does not shock the conscience.[7] *See Schaeffer*, 153 F.3d at 798.

As for the argument that the Defendants could have tried other means to apprehend Lile, or that the Defendants failed to comply with departmental policy, these claims do not implicate the Constitutional protections of the Fourteenth Amendment. *See Steen*, 486 F.3d at 1023-24.

Lastly, Defendants have asserted that they are entitled to qualified immunity. However, because this Court finds that Defendants did not violate any constitutional right on the facts alleged, there is no need for further inquiry into immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This Court recognizes that the Supreme Court recently granted certiorari to consider whether *Saucier* should be overruled. *Pearson v. Callahan*, --- U.S. ----, 128 S.Ct. 1702 (2008) (directing the parties to "brief and argue the following question: 'Whether the Court's decision in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) should be overruled?'"). In the meantime, the courts continue to apply the sequential approach *Saucier* prescribed. *See, e.g., Purtell v. Mason,* 527 F.3d 615, 621-22 (7th Cir. 2008). As a result, the immunity inquiry ends with the finding that the Defendants did not violate any constitutional right of the Plaintiff.

### Municipal Liability Claim

Ms. Browell asserts that the City of Lafayette and the Tippecanoe County Sheriff's Department are liable for their deliberate indifference exhibited by their unreasonable failure to provide adequate training and supervision. Because the constitutional claims against the individual officers are not viable,

---

7    While not affecting this Court's decision herein, the Court notes the appreciation expressed by Ms. Browell's daughter in a letter to the Defendants regarding the situation: "To the County Sheriff's Office [and] Lafayette Police Department . . ., On behalf of my entire family, I would like to thank-you for all you have done for my mother, Andrea Browell and our family. To the officer's (sic) who were involved at the scene, we thank-you for your service, dedication and skill in handling the situation . . ." Defs' Mtn., Doc. No. 31-5.

and it cannot be said that Ms. Browell sustained a constitutional injury, the claims against the Sheriff's

Department and Lafayette also fail, and any claim against the Defendants in their official capacities cannot

survive. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Windle v. City of Marion*, 321 F.3d

658, 663 (7th Cir. 2003); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000); *Tesch v. County of*

*Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998). *See also*, *Estate of Phillips v. City of Milwaukee*, 123

F.3d 586, 596-597 (7th Cir. 1997) (holding that the city and supervisors of police officers could not be

held liable on policy or failure to train theories absent a finding that the individual police officers are

liable on the underlying substantive claim). Further, there is not sufficient evidence that the Sheriff's

Department or the City of Lafayette's policies are unconstitutional, or that the training of the officers was

deficit, or that policymakers were on notice of such unconstitutionality or deficiency. *See Roach v. City*

*of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997).

With a well-known judicial bias in favor of trials by jury in civil cases, this Court has concluded

that the record in this case compels the granting of summary judgment on the federal claims under Rule

56 to the Defendants here.

### 2.    State Law Claims

Ms. Browell has alleged violations of her constitutional rights under Article I, § 11 of the Indiana

State Constitution, and advanced state law claims under the substantive law of Indiana, which this Court

has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367(a). Because Plaintiff's federal claims

have failed to survive summary judgment, this Court fails to see how the state law claims would be more

expeditiously determined in this Court than in some appropriate state court. Further, it is the firm

conviction here that those state law claims should be advanced, prosecuted and tried, if necessary in a

court of the State of Indiana. Therefore, the Court declines to exercise supplemental jurisdiction. 28

U.S.C. § 1367(c)(3); *Bean v. Wisconsin Bell, Inc.*, 366 F.3d 451, 456 (7th Cir. 2004). As such, Plaintiff's state law claims are not extinguished, but those claims are now **REMANDED** to the state trial court from whence this case was once removed.

## V. CONCLUSION

Viewing the record in the light most favorable to Ms. Browell, she simply cannot demonstrate that Defendants violated her constitutional rights. To the contrary, the uncontested facts reveal that Defendants' use of force in attempting to subdue Mr. Lile, a fleeing felon who had shot and ultimately killed Ms. Browell's son and held her unconsciously captive, was reasonable, and no jury could find otherwise. Where no constitutional violation occurred, the City of Lafayette and the Tippecanoe County Sheriff's Department are also not liable for such violations.

Based on the foregoing, Defendants' Motions to Strike are **DENIED** (Doc. Nos. 49, 52), and Defendants' Motions for Summary Judgment are **GRANTED** (Doc. Nos. 31, 33). The Court **DIRECTS** the Clerk to enter judgment in favor of Defendants Officer Thomas Davidson, Officer John Wells, the City of Lafayette, Deputy Joe Conn, Deputy Jason Huber, and the Tippecanoe County Sheriff's Department, and against Plaintiff Andrea Lynn Browell, on the federal claims asserted in her Complaint. Each party should bear its own costs. The remaining purely state law claims made by Plaintiff shall be **REMANDED** to Tippecanoe Circuit Court in Tippecanoe County, Indiana.

**SO ORDERED**.

**DATED: January 16, 2009**

                                     _/s/ ALLEN SHARP_____
                                      **ALLEN SHARP, JUDGE**
                                      **UNITED STATES DISTRICT COURT**